[Civ. No. 3662.   First Appellate District, Division One.—February 5,
1921.]

## SOPHIE E. BUCKLEY, Respondent, v. F. L. GADSBY, Appellant.

[1] BOUNDARIES — FENCE BETWEEN CITY LOTS — CONSTRUCTION BY
ORIGINAL OWNER—DESCRIPTIONS OF DEEDS CONTROLLING.—A fence
built by a former owner of a portion of a city block between
two lots on which he erected buildings and which he conveyed to
the predecessors of the present owners respectively is not control-
ling over the descriptions of the lots by metes and bounds contained
in the deeds, in the absence of a showing of years of acquiescence
in the boundary fixed by the fence.

[2] EJECTMENT—JUDGMENT—LOCATION OF BOUNDARY LINE.—A judg-
ment in an action in ejectment involving the ownership of several
small strips or plots of land lying along a line between two
larger portions of a city block which are owned respectively by the
plaintiff and defendants sufficiently describes the property in con-
troversy where it determines that plaintiff is entitled to recover
the possession of the premises described in her complaint and de-
crees that said premises are referred to and described in two cer-
tain surveys which are a part of the records of the city and
county, and further describes the premises as being embraced
within the exterior boundaries of a certain lot having a frontage
of twenty-five feet by a uniform depth as described in the lan-
guage of plaintiff's original deed.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco.   John T. Nourse, Judge.
Affirmed.

The facts are stated in the opinion of the court.

51 Cal. App.—19

G. Gunzendorfer for Appellant.

H. M. Anthony for Respondent.

RICHARDS, J.—This is an appeal from a judgment in favor of the plaintiff in an action of ejectment. The premises involved in the action consist of five small strips or plots of land lying along a line between two larger portions of Mission block 109 in the city of San Francisco, which are owned respectively by the plaintiff and defendants herein.

The facts of the case as disclosed by the evidence are these: In the year 1892 one Daniel Einstein became the owner of that portion of Mission block 109 having a frontage of one hundred feet on Twenty-second Street by a uniform depth of one hundred feet six inches. It was then unimproved and was somewhat precipitous, lying, as it did, upon the eastern slope of what is known as "Sanchez Street hill." Einstein presently undertook to improve this property by first causing a survey to be made of its exterior boundaries and by proceeding to have it graded and subdivided into four lots, each having a frontage of twenty-five feet on Twenty-second Street and a uniform depth of one hundred feet six inches. The lines dividing these lots were determined by the person grading and subdividing the tract through the use of a cotton string stretched from stakes driven in the ground at the front and back lines of the lot corners. Einstein began in the same year building cottages on these lots, the first of these being erected on the most westerly lot, which was in 1897 transferred to Catherine E. Gadsby, the predecessor of the defendants herein. Upon the adjoining lot a cottage was also erected, which lot, with its improvements, Einstein in 1898 conveyed to the predecessor of the plaintiff herein, who subsequently transferred the same to her. The deeds conveying the title to these respective lots described each by metes and bounds as being distant a definite number of feet from a common point, and as having a frontage of twenty-five feet on Twenty-second Street by a uniform depth of one hundred feet six inches. Between these two lots, Einstein, at the time of the erection of the cottages thereon, built a division fence upon the line marked by the use of the string as before stated; but whether such fence was upon the correct boundary line between

these two lots as shown by the descriptions in the deeds to the respective parties cannot be definitely ascertained from the evidence in the case. The parties, however, went into possession of their respective holdings as defined by this fence and for a while abode therein in neighborly amity without any particular inquiry, discussion, or knowledge as to just where the true line between their respective properties lay. It presently began to be noticed by both owners that the surface of the land lying along the rather steep sidehill upon which their lots were located was sliding, an effect due probably to defective subsurface drainage, and that its trend was to the southward so as to cause the land and improvements of the lot owned by the defendant herein to encroach upon the lot then owned by the plaintiff's husband. One of the first observed effects of this movement of the soil was that the defendants' house had been projected a few inches across the supposed or accepted line between the lots, and when this was seen to be so the defendants raised their house and moved it back a little. Another effect was seen to exist in the condition of the fence between the properties, which in places became loose and irregular in outline, falling down in places. At times one or other of the parties undertook to put back the fence in place, but in doing so apparently did not satisfy the other party; in fact, discords over the location of the boundary arose and became accentuated as time went by. In the year 1908 the wife of the defendant Gadsby herein commenced a proceeding under the McEnerney Act to have her title quieted to the lot, describing the same according to the metes and bounds of her original deed, and there being no appearances in that proceeding a decree was entered quieting her title to said described premises. In the year 1909 the plaintiff herein undertook to repair or replace a bulkhead along the front of her property, which had apparently been displaced by the sliding of the soil, and also attempted to extend the same inward along what she took to be the division line between the two properties. Defendant Gadsby's predecessor objected to this work upon the ground that it involved a trespass upon her premises, and she therefore commenced an injunction suit against the Buckleys, husband and wife, to restrain them from further proceeding with said work. In her complaint in said action she alleged that she was and

for many years had been the owner of the house and lot on Twenty-second Street designated as No. 3706, while the defendants were alleged to be the owners of the adjoining house and lot designated as No. 3704, which said two premises had been for many years separated by a fence erected by their common grantor and intended by him to form the boundary line between said two lots of land, which fence had ever since been maintained by the parties as such boundary line. She further alleged that the defendants were threatening to enter upon the premises of the plaintiff and remove said fence and put it in a different place in the course of building said bulkhead, wherefore she prayed that they be enjoined from so doing. The defendants, though regularly served with process in said action, did not appear to contest the same, and judgment was accordingly entered, which followed the language of the complaint in describing the lots of the respective parties by their house numbers, and which enjoined the defendants from building any bulkhead in front of the plaintiff's premises and from removing said division fence or placing "the same in any other place than where it now is or formerly was." No appeal was taken from this judgment. In the year 1910 the plaintiff herein commenced a proceeding under the terms of the McEnerney Act to establish and quiet her title to the lot upon which she resided, describing the same according to the boundaries of her deed as being twenty-five feet on Twenty-second Street by a uniform depth of one hundred feet six inches. The defendant Gadsby herein appeared in that proceeding, and in his answer therein denied that the plaintiff was in possession of that portion of the premises described in her complaint, which consisted of those five fragmentary parcels thereof which are in controversy in the present action, and further affirmatively alleging that the said defendant himself was the owner and in quiet and peaceable possession thereof at the commencement of said proceeding by virtue of the transfer to him of the adjoining premises by Catherine E. Gadsby, his wife. The defendant further pleaded by way of estoppel the judgment theretofore entered in the injunction suit above referred to. Upon the trial and submission of that proceeding upon the issues thus presented the trial court made and entered its decree quieting the title of the plaintiff therein to those portions of the

premises described in her complaint of which she was in possession, but as to the five fragmentary parcels of which the defendant Gadsby claimed to be the owner and in possession the trial court found that at the time of the filing of the plaintiff's complaint in said proceeding said Gadsby was in the actual and peaceable possession thereof. It therefore made no further finding as to the rights of the respective parties in and to said fragmentary parcels of land, but merely undertook by its decree to quiet the title of the plaintiff to the remainder of the lot described in her complaint of which she was admittedly in possession. This judgment also became final, no appeal having been taken by either of the contesting parties.

Thereafter, and on May 4, 1915, the plaintiff commenced the present suit in ejectment to recover possession of those same five fragmentary plots of land to which defendant Gadsby had asserted ownership in the proceeding last above referred to. The defendant Gadsby appeared and answered, setting up substantially the same matters in the way of ownership and estoppel embraced in the answer filed by him in the former proceeding. Upon the trial of the cause the respective parties introduced their original deeds showing each to have been entitled by the descriptions contained therein to a twenty-five foot lot on Twenty-second Street of uniform depth, and each also in turn gave testimony as to the existence and location of the division fence, and as to the fact and effect of the sliding of the soil observed to be taking place not long after their respective ownerships began and which had caused the improvements upon the lot of said defendant to invade the plaintiff's premises as the same was described in her original deed. The said defendant, in addition to his testimony as to the location of said fence line and his long-continued possession of the fragmentary parcels lying upon his side thereof, offered to introduce in evidence the judgment-roll in the case of *Catherine E. Gadsby, plaintiff*, against *All Persons,* above referred to, and which judgment-roll the court admitted in evidence. The defendant then offered the judgment-roll in the case of *Sophie Buckley* v. *All Persons,* also above referred to, but to the admission of this record the plaintiff objected, which objection the trial court sustained. The defendant then offered the judgment-roll in the case of

*Catherine E. Gadsby* v. *Sophie Buckley and Daniel Buckley* (the injunction suit above referred to), to the admission of which the plaintiff objected, which objection the court also sustained.

Upon the submission of the cause the trial court made its findings and decision in the plaintiff's favor, and directed a decree to be entered thereon adjudging that the plaintiff was the owner and entitled to the possession of the premises described in her complaint. The said defendant's motion for a new trial was thereafter made and denied, whereupon he took and has prosecuted this appeal.

[1] The appellant's first contention is that the finding by the court that the plaintiff was the owner and entitled to the possession of the lot of land having a full twenty-five feet frontage on Twenty-second Street by a uniform depth of one hundred feet six inches, as the same is described in the original conveyance to her predecessor, is unsupported by the evidence in the case.

This contention rests upon several separate claims put forth by the appellant, the first of which is that the respective ownerships of the parties hereto in their adjoining properties are to be determined not alone or chiefly by the descriptions in their deeds, but rather by the facts that Einstein, who originally owned and subdivided the tract which embraced both these lots and who erected the buildings upon each and built the fence between them prior to any transfer to the predecessors of the parties hereto, had thereby determined the boundaries of each lot, and that these facts rather than the description by metes and bounds in the descriptions in the deeds of the respective parties control the location of the dividing line between their respective properties. In making this contention the appellant relies upon the case of *Bullard* v. *Kempff*, 119 Cal. 9, [50 Pac. 780]. An examination of that case, however, shows a quite different situation than that presented in the instant case. There the original owner had so built the houses which he erected upon the respective lots afterward sold by him that they stood upon and marked to the extent of their depths the dividing line between the lots, and as to the remainder of said line in the front and rear of said houses he had terraced the lots and constructed permanent bulkheads, thus making each lower lot three feet below the next

above it. These facts the supreme court held might be taken into account in determining whether one of the later lot owners was entitled to a temporary injunction to restrain his immediate neighbor from removing said bulkhead with a view to placing it upon the line called for by the descriptions of the deeds. The supreme court, while indicating that these facts were proper to be taken into account in passing upon the matter of granting or refusing a temporary injunction, expressly refrained from finally determining the rights of the parties in the premises. Its decision, therefore, cannot for that reason be regarded as a controlling authority in the instant case. The inapplicability of that case to the facts of the present case may also be seen to consist in this difference: that while in that case the improvements made by the original owner were so permanent as to be practically controlling proof of his intent as to the location of the division line between the lots of his subdivision, the fence erected by Einstein was no such permanent structure, and hence, even if its original location were known, it could hardly be said to overcome the specific descriptions in his conveyances defining the dimensions of the lots under consideration in the instant case.

There is another reason why the decision in said former case is not to be given application to the facts of the case at bar. The court therein referred to the affidavits of the parties showing long years of acquiescence in the boundaries fixed by the permanent character of the structures marking the same. It is contended by the appellant in the present case that the evidence introduced herein shows a similar acquiescence in the boundary line, but with this statement we cannot agree, since the proofs herein sufficiently show that within a very brief period of time after the occupancy by the respective parties of their holdings the surface movement began to be observed and commented upon and its effects noted and for the time being corrected, but that ere long discords began to arise between the parties which finally resulted in the diversified litigation above referred to and which has continued in one form or other ever since. There has never been an agreement between the parties, express or implied, that the line as originally marked by the fence in question should constitute the boundary line between their premises. In addition to this there is no satis-

factory or sufficient evidence in the record which would have enabled the trial court, or which enables us, to determine just where said fence was originally placed, or whether or not it was upon the correct boundary line between these two properties as the same is delineated by their respective deeds and as said fence stood before the lands of the one began to slide down upon the lands of the other. The evidence sufficiently discloses that from the time when the effects of this shifting quality in the surface of the soil of these lots became noticeable the fence was at times and places in a loose, wobbly, and falling condition, and that it was from time to time replaced by the respective parties without particular regard for its original line or location. The various surveys made by the respective parties after their troubles had been brought to court, when they show the fence at all, show it to be out of alignment either from the effects of the slide or from the acts of the parties in making its several replacements. This being the state of the record, we are unable to determine where the fence did originally stand, and hence cannot hold that the parties ever acquiesced in a boundary line which would place the fragmentary parcels of land involved in this litigation upon the defendant's side of said boundary.

And for a like reason we are constrained to hold that the cases cited by counsel for the appellant, and more particularly the recent decisions of the supreme court in *Young* v. *Blakeman,* 153 Cal. 477, [95 Pac. 888] , *Price* v. *De Reyes,* 161 Cal. 488, [119 Pac. 893], and *Silva* v. *Asevedo,* 178 Cal. 495, [173 Pac. 929], cannot be given application to the case at bar.

This brings us to the final contention of the appellant, which relates to the effect of the judgments rendered for or against the parties in those several actions or proceedings—instituted by one or other of them during the years of litigation preceding the commencement of the present action. In none of these, as we shall see, was the precise question at issue which would have rendered the judgment therein *res adjudicata* as to the matters involved in this action. The first of these proceedings was that instituted by Catherine E. Gadsby, the predecessor of defendant F. L. Gadsby, wherein she sought to have her title quieted to the twenty-five foot lot described in her original deed. The trial court

admitted the judgment-roll in that case, but manifestly the judgment obtained therein would in nowise affect the present controversy.

The next case was that of *Gadsby* v. *Buckley,* a case commenced in 1909, by the present defendant's predecessor, to enjoin the Buckleys from attempting to build a bulkhead along the boundary between the two lots, in which case the trial court by its judgment granted an injunction upon the defendant's failure to appear. The defendant in the present case offered the judgment-roll in that case in evidence, claiming that it determined the boundary line between the parties in that action, and, hence, in this one. The trial court herein refused to admit such judgment in evidence, and of this refusal the appellant herein complains. A cursory inspection of the judgment in that case, however, shows that it concludes nothing tangible as to the actual location of the boundary line between these two lots or of the fence originally marking the same. It refers to the premises of the respective parties by house numbers, which, of course, sheds no light upon the boundaries, and it enjoins the defendants from building a bulkhead upon the plaintiff's side of "the line where the fence formerly erected by one Daniel Einstein formerly ran," or from "removing said fence and from placing the same in any other location than where it now is or formerly was"; but where said fence was at the time of said judgment or where the same "formerly was" cannot be ascertained from anything contained in said judgment-roll. It follows that the trial court properly held that said judgment determined nothing decisive of the case at bar, and, hence, properly excluded the same.

The next proceeding was that of *Sophie Buckley* v. *All Persons,* instituted in 1910, wherein the plaintiff sought to have her title quieted to premises, the description of which embraced within their boundaries the fragmentary parcels of land involved in the present action. The defendant in the present action appeared in that proceeding to oppose the effort of the plaintiff therein to include in said proceeding said fragmentary parcels of land, asserting that he and not the plaintiff was the owner and in peaceable possession thereof at the time of the institution of that proceeding; that cause came to trial and upon its sub-

mission the trial court rendered a judgment quieting the title of the plaintiff therein to those portions only of the premises described in her complaint and expressly excluding said fragmentary parcels of land, and as to these the trial court found that the plaintiff was not, but the defendant was, in the quiet and peaceable possession thereof at the time of the commencement of the proceeding. Further than this the trial court did not go, and decided nothing as to the ownership and right of possession of said fragmentary parcels of land, being evidently and correctly of the opinion that in that sort of special proceeding it had no jurisdiction over the title to premises not shown to have been in the quiet and peaceable possession of the plaintiff when she commenced her proceeding. It will thus be seen that the judgment therein also concluded nothing material to the present controversy, unless possibly to determine that the defendant Gadsby was in the quiet and peaceable possession of the parcels of land in dispute herein on July 7, 1910, the date of the initiation of that proceeding. The appellant herein complains that notwithstanding the exclusion of said judgment by the trial court it has made a finding to the effect that the said appellant was not in the quiet and peaceable possession of the premises herein on July 7, 1910, contrary to the effect of said judgment, which he therefore insists should have been allowed in evidence. It is true that the trial court made such a finding, and it is probably also true that the trial court should have admitted said judgment in evidence for the sole purpose of furnishing proof of that fact, but the fact itself is immaterial to the issues in this case, since it sufficiently appears that the defendant Gadsby herein has never had such a quiet, peaceable, and undisputed possession of the premises in question for such a period of time as would have invested him with the title thereto by adverse possession. Whatever error the trial court may, therefore, have committed in this particular matter we hold not to have been prejudicial to a degree justifying a reversal of the case.

[2] Finally, the appellant contends that the judgment herein is fatally defective for the reason that it does not definitely fix the location of the boundary line between the parties. The trial court does, however, determine that the plaintiff is entitled to recover the possession of the prem-

ises described in her complaint, and it further decrees that said premises are referred to and described in two certain surveys which are part of the public records of the city and county of San Francisco, to which reference is made, and the trial court further describes the premises in dispute as being embraced within the exterior boundaries of that certain lot having a frontage of twenty-five feet on Twenty-second Street by a uniform depth of one hundred feet and six inches, and which is described in said decree in the language of the plaintiff's original deed. We think that these several descriptions render certain said decree so as to enable an officer executing the same to definitely locate the premises in dispute.

We do not deem the other points urged by appellant sufficiently important for separate consideration.

Judgment affirmed.

Waste, P. J., and Bardin, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 5, 1921.

All the Justices concurred.