[Civ. No. 5851.   Third Appellate District.—November 30, 1938.]

## THE PEOPLE, Respondent, v. RIO NIDO COMPANY, INC. (a Corporation), et al., Appellants.

Landels, Weigel & Crocker and Edward D. Landels for Appellants.

Toland C. McGettigan, District Attorney, and Wright, Wright & Larson for Respondent.

PULLEN, P. J.—This is an action brought in the name of the People of the State of California against eighty-six defendants, claiming the ownership of certain lots in a subdivision upon the Russian River in Sonoma County, known as Rio Nido, formerly Eaglenest.

Plaintiff contends the lands involved were dedicated as a public park in 1906, and that such dedication was judicially determined by a judgment of the Superior Court of Sonoma County in 1912. In reply the defendants contend that no such dedication ever occurred and that the judgment of 1912 was not determinative of the issues here presented, and is not binding upon these defendants.

Some time prior to 1906 the Russian River Land Company acquired a tract of land near Rio Nido. In 1906 the land company caused this tract to be surveyed and divided into seven divisions, which were delineated upon two maps, referred to during this trial as "Map 1 of Eaglenest" and "Map 2 of Eaglenest". We are here concerned with map 2 only, which shows divisions 1, 2 and 3, and the land here in dispute lies in divisions 2 and 3.

Before offering the lots for sale to the public the Russian River Land Company complied with the law providing for

the acceptance of the map by the supervisors of Sonoma County. The certificate on the map shows the acceptance but makes no reference to any park.

The lots in divisions 2· and 3 are arranged in an ellipse built up along the hillside and fronting upon an open wooded section, and it is the contention of plaintiff that it was this open wooded section that was dedicated as a park site.

In 1912, one Mark W. Levy started to erect a house in an area expressly delineated as a park area upon the map of subdivision 6. An action was filed in August, 1912, in the name of the People of the State of California against Levy and the Russian River Land Company, and notice of *lis pendens* recorded. Thereafter a judgment was entered declaring certain areas to be public parks; with respect to divisions 2 and 3, with which we are here concerned, the judgment stated:

"Third. That all parks in the valleys of division 2 and 3 of Rionido, formerly 'Eaglenest' were on the 8th. day of the said October, 1906, dedicated to the public use and has all the time since and are now public property.; that said park in said Division 2 is filed in Map 2 of Eaglenest volume 19 at page 19 that Park No. 3, in valley division No. 3 is recorded in Map 2 of Eaglenest volume 19 at page 19."

By virtue of this paragraph the trial court in the present case now holds the land in question to be a public park.

We here have two questions to determine:

First, does the evidence support the findings and judgment; and

Secondly, is the former judgment binding upon these defendants?

■ Considering the second of these questions first, we are constrained to hold that such judgment did not fix the character of the lands for several reasons.

The most obvious defect in the judgment as expressed in paragraph "Third",—which admittedly is the only portion of the judgment that refers to divisions 2 and 3—is its certainty. It is essential that a judgment, particularly one affecting real property, be specific and certain in its identity of the lands affected. It must be so certain that a stranger may be able to clearly identify the particular tract. This elementary requirement is, we think, undisputed. (Freeman on Judgments, 5th ed., vol. 2, p. 1540; vol. 1, p. 165, and Cor. Jur., pp. 1209, 1210.)

Paragraph "Third" does not attempt to mark out the portions of the valleys set aside or dedicated to public use, but only says "that all parks in the valleys . . . were . . . dedicated to the public use and has all the time since and are now public property". The judgment then attempted to identify the map, continuing "that said park in said Division 2 is filed in Map 2 of Eaglenest, Volume 19 at page 19; that Park 2 in Valley Division No. 3 is recorded in Map 2 of Eaglenest, Volume 19, at page 19". While the reference is to some volume 19 it is quite indefinite although accepted at the trial as referring to volume 19 of maps in the office of the county recorder of Sonoma County. An examination of this map, however, discloses nothing that can aid in locating or identifying any "park in the valleys". There is nothing upon the face of the map to indicate parks or valleys or any dedicated lands. The map merely shows an elliptical course of lots, but nothing to indicate any contour, any valleys or any parks. Undoubtedly a judgment purporting to adjudicate the title to real property must be as clear and explicit as a deed which purports to convey real property. Certainly a deed that attempted to convey a lot in a valley and referred to a map which showed neither a lot nor a valley would have to be held too uncertain to effect any transfer.

A further defect in the third paragraph is that it fails to declare that any land was actually dedicated to public use as a park. It indirectly says that if there are any parks in the valleys of divisions 2 and 3 they are public parks. An examination of the decree with respect to other divisions wherein certain lands are found to be public parks, reveals the decree was specific in that it described with sufficient particularity the lands so dedicated.

If one interested in the construction and scope of the decree is required to examine the pleadings of the case upon which it was based to understand it, such examination is of no assistance here. The complaint in paragraph II describes the tract belonging to the Russian River Land Company. Paragraph III recites that the land company, for the purpose of founding a village or resort upon a portion of said tract caused the same to be surveyed into lots, streets, alleys and parks, that a part of the lands were surveyed into seven divisions so that each division should slope down into a natural valley 100 to 200 feet wide and a half a mile to a mile long,

and that a plat was made delineating the seven separate divisions and the first tier of lots fronting upon an open space.

Paragraph IV alleges that the land company thereafter sold a large number of lots with reference to the map with the representation that the parks, marked upon the map as "Parks", would remain open perpetually to public use and were dedicated to the public. Paragraph VIII alleges the parks were mapped, platted and recorded with the intention of the land company that they should be open parks dedicated to the public as public parks and that said dedication was never revoked.

From the foregoing brief summary it appears from paragraph III that "each of said divisions should slope down into a natural valley . . . ". This does not identify any particular land as being in the "valleys" nor does it describe any "parks in the valleys". It also is alleged in paragraph III that the first section or tier of lots fronted upon an open piece of ground, but it is not alleged that this particular piece of ground is the same as the natural valley referred to in the preceding paragraph. In paragraph IV it is directly stated that the lots were sold to a great many persons with the representation that "said Parks thereupon marked 'Parks' would become a part of this purchase and remain open perpetually to public use. That said parks so marked upon said plat or map was intended by said Russian River Land Company as public parks . . . ". The allegation in paragraph IV that the parks were not subdivided into lots is not helpful in identifying the parks as a large part of the land shown upon the several maps is not subdivided into lots, and no place upon map 2 do we find any area marked "Parks" as alleged in paragraph IV.

■ One whom it is sought to bind by a judgment is not required to seek beyond the judgment roll, nor to indulge in surmise. One test is expressed in *Hedrick* v. *Lee,* 39 Idaho, 42 [227 Pac. 27], as follows:

"The general rule is that a judgment involving the right to possession of real property must sufficiently describe it to enable an officer charged with the duties of executing a writ of possession to go upon the ground, and, without exercising judicial functions, ascertain the locality of the lines as fixed by the judgment."

In *Hill* v. *Barner,* 8 Cal. App. 58 [96 Pac. 111], a suit to quiet title, the question was whether certain lots were within a railroad right of way. In reversing a judgment for plaintiff this court held the findings were insufficient in that they did not precisely fix the boundary lines of the lots, saying: " . . . In order to give stability to the judgment, it and the corresponding findings should describe the land with such definiteness as to enable the parties to know, from such description, the precise limits or the location of the boundary lines thereof. (*Porter* v. *Counts,* 6 Cal. App. 550 [92 Pac. 655]), *supra; Shaw* v. *Hill,* 79 Mich. 86 [44 N. W. 422]; *Wickersham Banking Co.* v. *Rice,* 137 Cal. 506 [70 Pac. 546].) Measured by these tests, the findings and judgments in the cases at bar cannot for a moment be upheld."

In *Buckley* v. *Gadsby,* 51 Cal. App. 289 [196 Pac. 908], an attempt to introduce a judgment roll of a prior action on the theory of *res judicata,* was refused for the reason the description of the property in the judgment was too uncertain to delineate the boundaries and therefore the judgment could not serve as *res judicata.*

█ One of the means of bestowing property upon the government is by dedication, and as said in *Diamond Match Co.* v. *Savercool,* 218 Cal. 665 [24 Pac. (2d) 783]:

"To constitute a valid and complete dedication there must be an intention by the owner, clearly indicated by his words or acts, to dedicate the lands to public use (*City of Venice* v. *Short Line Beach L. Co.,* 180 Cal. 447, 450 [181 Pac. 658]), and an acceptance either by public user or formal resolution. (*Brown* v. *Bachelder,* 214 Cal. 753 [7 Pac. (2d) 1027].)"

A dedication, being a voluntary transfer, as pointed out in *County of Inyo* v. *Given,* 183 Cal. 415 [191 Pac. 688], partakes both of the nature of a grant and also a gift, and is governed by the fundamental principles which control such transactions. It consists of an offer and acceptance and both of those elements must be clearly and definitely established. There must be the intention of the owner to dedicate to public use clearly indicated by his words or acts, and unequivocal proof of the acceptance.

One of the strongest prohibitions against the government is that it cannot deprive one of his private property without just compensation.

"Property cannot be taken for public use without compensation, unless the owner is willing; and this willingness should be manifested by clear and unmistakable acts. Parties are not to be done out of their property by doubtful implications, no matter how greatly the public may be inconvenienced." (*Cerf* v. *Pfleging*, 94 Cal. 131 [29 Pac. 417].)

■ Dedication may be either a statutory or a common-law dedication. At the time of the alleged dedication of the land here in question, by the Russian River Land Company, a legislative act (Stats. 1901, p. 288) required the filing of a map with the county recorder, which map was required to accurately set forth the land involved, showing all land reserved for public purposes, and all lots intended for sale. It also required that the map be presented to the governing body having control of the streets and highways in the territory shown on the map, and that there be endorsed upon the map which streets, roads, alleys and highways were accepted on behalf of the public, and when so accepted they become dedicated to public use. When so accepted the map was required to be recorded in the office of the county recorder.

An examination of map 2 of Eaglenest fails to show any acceptance by the supervisors of Sonoma County of any lands in the tract for park or any public purpose, nor does the map show any lands set aside for park purposes. All the map shows is certain numbered lots, some 49 in division 2 and 75 in division 3. The remaining area is unmarked. The acceptance by the supervisors was merely that by resolution the board accepted the map, which was not an acceptance of any dedicated lands, none being shown upon the face of the map. We cannot hold, therefore, there was any statutory dedication.

"A common law dedication," as said in *People* v. *Dreher*, 101 Cal. 271 [35 Pac. 867], "is the setting apart of land for the public use, and to constitute a valid and complete dedication two things are necessary, to-wit: An intention by the owner, clearly indicated by his words or acts, to dedicate the land to public use, and an acceptance by the public of the dedication. . . . And before it has been accepted the owner of the land is not precluded from revoking at any time the offer to dedicate."

■ It is the theory of respondent that the land company offered the land in question when it presented to the board

of supervisors and recorded map No. 2 of Eaglenest. It is also alleged that by way of confirming said dedication it subsequently sold lots and stated to purchasers that certain areas had been dedicated to public uses for public parks, and that since said dedication, the lands have ever since been used as public parks.

Even if it is held that there was an offer to dedicate, which we cannot find, there was no acceptance of such offer by or upon behalf of the public. There was no formal acceptance by resolution of any governing body and for that reason no statutory dedication. Nor was there such use by the public as to indicate an intention to accept.

To establish a public use respondent introduced evidence to the effect the area had been used by the neighboring property owners and by others for picnics, camping and for a playground. But such uses were intermittent; the site was, after a period of twenty years, in the same condition as when the tract was originally surveyed, except for the accumulation of rubbish. There were no signs, no enclosures, no supervision, no attempt to eradicate poison oak or underbrush, or to develop thereon any special attractions. In fact, the use made of the tract was the same use as would be made of any uninclosed wooded tract near any inhabited area. In *City of San Diego* v. *Hall*, 180 Cal. 165 [179 Pac. 889], it was said, "something more than a mere casual user must be shown before any valid dedication will be implied". *F. A. Hihn Co.* v. *City of Santa Cruz*, 170 Cal. 436 [150 Pac. 62], was an action involving title to certain beach property; the plaintiff claimed the land in private ownership, and sought to quiet title. The city of Santa Cruz raised various issues in defense, one of which was dedication accomplished by public user. A judgment in favor of the city was reversed by this court, although the evidence showed that for many years the land had been used by the public generally for walking, bathing, and other recreation. The court said:

"For many years the public has been in the habit of going upon and across this land in the same manner in which the adjoining tide land was used; . . . Plaintiff and its predecessors never interposed any objection to such use. . . . In order to constitute a valid dedication, there must be an intention on the part of the owner to devote his property to the public' use. . . . It is true that this intent may be inferred from

long acquiescence in a use by the public. . . . But where the land is unenclosed and uncultivated, the fact that the public has been in the habit of going upon the land will ordinarily be attributed to a license on the part of the owner, rather than to his intent to dedicate. . . . This is more particularly true where the user by the public is not over a definite and specified line, but extends over the entire surface of the tract. . . . It will not be presumed, from mere failure to object, that the owner of such land so used intends to create in the public a right which would practically destroy his own right to use any part of the property."

The recent case of *City of Manhattan Beach* v. *Cortelyou et al.,* 10 Cal. (2d) 653 [76 Pac. (2d) 483], disposes of several of the questions here presented. There the Manhattan Beach Company was the owner of a large tract of land fronting the Pacific Ocean. A map of the land was filed by which it was claimed certain portions were dedicated for public use. In determining that issue the court fully considered the intention of the parties, payment of taxes, and declarations by the grantor, and held generally as appellant here contends.

The county did nothing to evidence the fact that any park existed on the site in question. It assessed the land to individuals for tax purposes and collected the taxes so levied; and by accepting the judgment rendered in 1912 (*People* v. *Levy et al.*) wherein it was decided that only such lands in divisions 2 and 3 as might be marked as "Parks" on map 2 of Eaglenest, was dedicated to public use, is now precluded from claiming a prior dedication.

■ It would appear also the present judgment is fatally defective by reason of the failure to describe with certainty the lands affected. The park lands, as found by the court, are described in the judgment under review as "All those lands in said County of Sonoma lying in the valleys of Divisions Numbered 2 and 3 of Rionido, formerly 'Eaglenest', as said subdivisions are shown on that certain map 2 of Eaglenest recorded in Volume 19 at page 19 in the office of the County Recorder of said Sonoma County, which lands are shown and platted on said map as open space or piece of ground not divided into lots, and which platted open space was and is on said map abutting on a surrounding and numbered tier of lots as platted and numbered on said map."

Being an attempt to identify specific real property appellants have a right to have the property described with certainty and particularity. The property is not described by metes and bounds, nor by monuments nor by natural boundaries. It purports to identify the property by reference to the map hereinbefore considered. Even if the reference to the elliptical chain of lots is sufficiently definite to determine the eastern, northern and western boundaries, there is no southern boundary, nor anything by which it can be fixed.

The findings assume the sufficiency of the description, the fact of offer and acceptance, the sufficiency of the 1912 judgment, and other points necessary to a complete determination of these issues. If what we have held is correct, then the findings are not supported by the evidence.

It has been suggested that should this court believe the description of the park areas too uncertain in the judgment, we might, under the power granted by section 956a of the Code of Civil Procedure, revise the findings and decree. We do not believe this court can do that in that there is no evidence in the record which makes definite any park sites in divisions 2 or 3.

We are of the opinion that for the reasons herein given the judgment must be reversed. It is so ordered.

Thompson, J., concurred.