[Civ. No. 21288.   First Dist., Div. Two.   Nov. 16, 1964.]

THELMA HOLLIDAY, Plaintiff and Appellant, v. GEORGE H. HOLLIDAY, Defendant and Respondent.

Joseph L. Bortin for Plaintiff and Appellant.

Ring, Turner, Ring & Wright and Ewart Lytton Merica for Defendant and Respondent.

AGEE, J.—Plaintiff obtained an uncontested interlocutory decree of divorce from defendant on October 13, 1960. The decree approved a property settlement agreement dated October 12, 1960. The final decree was entered on October 18, 1961.

Plaintiff filed this action against defendant on February 26, 1962, seeking to set aside the division of community property made pursuant to the agreement. She appeals from an adverse judgment.

Appellant does not claim that there was any concealment of the *items* of community property. Her contention is that the *values* of such items were not disclosed to her and that the value of the share received by her under the agreement was disproportionate to that received by respondent.

The principal issue of fact at the trial was whether the parties had orally agreed that, as alleged in the complaint, the community property "was to be divided upon such basis as would give each an equal share in value." Respondent denied the making of any such agreement and the trial court expressly found that appellant's allegation was untrue. Appellant does not contend that this finding is not supported by substantial evidence.

Appellant's principal contention on appeal is that the record requires a finding of fraud *as a matter of law,* citing *Vai* v. *Bank of America,* 56 Cal.2d 329 at page 342 [15 Cal. Rptr. 71, 364 P.2d 247], as follows: "The failure of the husband in the instant case to disclose fully and fairly material facts relating to the value of community assets from which John [husband] gained an advantage constitutes a concealment of material facts and a breach of this fiduciary duty. This was constructive fraud, whether or not such failure to disclose was accompanied by an actual intent to defraud."

In *Vai,* the Supreme Court discussed the evidence at length and concluded that "it is readily apparent that many representations [made by the husband as to value] were either not true or at least only partially true." (P. 340.) The most flagrant instance cited was the acceptance by the husband of $25,000 under a deposit receipt agreement to sell certain community vineyard land at a price of $525,000, or $814 an acre. The husband had represented to the wife that this

property had a book value of only $200 an acre and could not be sold for as much as $400 an acre. The husband had signed the deposit receipt agreement 23 days *before* the wife executed the property settlement agreement. Four days *after* the settlement agreement was executed, an escrow was opened and the sale was completed. The settlement agreement allocated the vineyard land to the husband and he was thus enabled to convey title. The wife did not learn of the transaction until after it had been completed.

In the instant action, there is no evidence of any failure by respondent to disclose any material facts *of which he had knowledge.* Both parties were very familiar with each item of property which they had acquired and each knew the cost thereof. However, as the trial court stated, ''neither party saw fit to go out and have any appraisal made of any of these pieces of property.''

The findings of fact made by the trial court herein completely negate any breach of the fiduciary duty owed by respondent to appellant. The evidence will be stated in the light most favorable to respondent wherever there is any conflict.

On December 10, 1959, appellant consulted an attorney, Mr. Fenstermacher, regarding a divorce and a division of community property. She then prepared a list of demands and presented them to respondent. No agreement was reached at that time.

On September 5, 1960, appellant left the home and moved to San Francisco. She testified that she intended ''to go ahead with the divorce as I had planned it, and Mr. Holliday [respondent] called me on October the 3rd [1960] and asked me if I would be willing to let John Begin handle the divorce for both of us, that John would give us both a fair deal and that it would be to our advantage, there wouldn't be all the notoriety and all that sort of thing, and we could make it a friendly divorce.'' On October 5, 1960, both parties went to the office of Mr. Begin.

Attorney Begin testified that two or three days before this respondent had telephoned to him and told him that ''he and Mrs. Holliday wished to discuss a divorce with me and wanted to make an appointment.'' The appointment was made.

At that time, according to Mr. Begin, appellant presented a sheet of paper on which she had written down her demands. Mr. Begin told her that he would send a draft of the settlement agreement to Mr. Fenstermacher for his examination and approval. Appellant stated that ''Mr. Fenstermacher no

longer was representing her, that she did not want me to send it to Mr. Fenstermacher and it would not be necessary for me to go further with that phase of the matter.''

The parties then discussed which one of them should apply for the divorce. It was agreed that appellant should do so and, as Mr. Begin testified, this was how he ''became the attorney of record for Mrs. Holliday'' in the divorce proceeding. Mr. Begin testified that he acted only as the scrivener in the drafting of the settlement agreement and that the divorce was granted following an uncontested hearing.

The property settlement agreement disposed of all of the items of community property then existing. Certain insurance policies were mentioned in the agreement but these had been otherwise disposed of and were therefore not among the items included in the division provided for in the agreement.

The items which went to the appellant are listed in the agreement as being (a) the dwelling house and lot, (b) a 1956 Ford automobile, (c) all household furniture, furnishings and equipment, and (d) personal clothing, jewelry and effects.

The items going to respondent are listed as the ''rest, residue and remainder of the community property, including but not by way of limitation,'' (a) the stock in trade, fixtures and assets of the hardware store run by respondent, (b) a 1953 Ford automobile, (c) a boat and outboard motor, (d) an undivided one-half interest in the building in which the store is located, and (e) personal clothing, jewelry, tools and sporting equipment and effects.

The trial court found that it is not true that the community property was ''to be divided upon such basis as would give each an equal share in value of the community assets of the parties.'' Therefore, no finding was made as to the respective values of the items divided under the agreement.

However, the briefs disclose that there is no substantial difference between the parties as to such values. Appellant lists the house at $25,000 and the furnishings and equipment at $2,500. No valuation is placed upon either of the two automobiles or the respective personal clothing and effects of the parties.

Appellant's brief places a valuation of $27,500 on the half interest in the business realty. The business itself is valued at $10,250, consisting of inventory of $6,250, store fixtures at $1,000, accounts receivable of $1,000 and the store bank account at $2,000. There is some difference as to the value

of the boat but an independent appraisal of $470 appears to be reasonable. Respondent also received a tax refund of $1,482.35.

The settlement agreement also obligated respondent to pay to appellant the total sum of $1,975 in cash and to pay attorney fees and costs of $275.

Therefore, it would appear that appellant received, on a dollar valuation basis, $27,500 plus $1,975, or a total of $29,475 and that respondent received $39,702.35 less $1,975 and $275, or a net total of $37,452.35. Under appellant's theory, she should have received an additional amount, equal to one-half of the difference between the above respective totals, or the sum of $3,988.68.

In her pretrial statement appellant describes her action as one ''for equitable relief from a property settlement agreement imposed upon plaintiff by fraud.'' The trial court made detailed findings negating this charge. These findings are supported by substantial evidence and appellant does not contend to the contrary.

Appellant bases her appeal upon the contention that respondent was required as a matter of law to obtain for her an appraisal of all of the items of community property. As her counsel worded such contention to the trial court, ''he [respondent] is guilty of constructive fraud for the failure, voluntarily, even without being asked, to come forward and fix values.'' We disagree.

There is absolutely no evidence of any concealment by respondent of any facts within his knowledge. Appellant admitted that she had frequently gone over the business records and knew what the income from the business was for the year 1959. In short, she was given all of the information regarding the community property which respondent had. The settlement was not arrived at hurriedly. There was a period of 10 months elapsing between appellant's consultation with Mr. Fenstermacher and the signing of the agreement.

Under the circumstances of this case we think that respondent did all that his fiduciary duties to appellant required him to do.

Plaintiff's remaining contention is that paragraphs VII and XIII of the trial court's findings of fact are inconsistent with each other and that finding XIII is contrary to an admission made in paragraph VI of defendant's answer to plaintiff's complaint.

Finding VII finds to be true, and paragraph VI of the

answer admits, the following portion of paragraph 13 of the complaint: "13. Throughout said negotiations, defendant never, either personally, or through his said attorney, or otherwise, gave any accounting to plaintiff as to the value of said property; nor did he ever advise plaintiff as to the individual values of the items thereof . . . ."

Finding XIII finds that it is *not* true that defendant "did not *ever* advise plaintiff as to the value of individual items of community property." (Italics ours.)

Finding VII is limited to the period described in said paragraph 13 as "Throughout said negotiations" between the parties which resulted in the execution of the property settlement agreement. This period commenced on December 10, 1959, when, as the trial court states, "She [plaintiff] went to Mr. Fenstermacher and she came back home and gave to Mr. Holliday a list of her demands."

However, as the court stated in finding XVI, "It is true that both parties did *discuss* the values of various items of community property on many occasions and both parties were aware of the values of the same." (Italics ours.)

Thus, it is reasonable to construe finding XIII as referring to the period prior to December 10, 1959, when and as the various items of community property were acquired. The testimony is undisputed that the parties did discuss values at such times but that, after appellant had consulted with Mr. Fenstermacher, respondent did not express any opinion as to the current values of the various items.

The general rule that findings must be liberally construed in support of the judgment is applicable in this instance. (*McKinley* v. *Buchanan,* 176 Cal.App.2d 608, 612 [1 Cal. Rptr. 573].) Certainly, there is here no such inconsistency in the findings as would require a reversal of the judgment.

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied December 16, 1964, and appellant's petition for a hearing by the Supreme Court was denied January 13, 1965.