[Civ. No. 8945.   Fourth Dist., Div. Two.   Jan. 29, 1969.]

SALVATORE DALUISO et al., Plaintiffs and Respondents, v. HARLEY R. BOONE et al., Defendants and Appellants.

Wilson, Wilson & Borror and William H. Wilson for Defendants and Appellants.

.Falcone & Falcone and A. V. Falcone for Plaintiffs and ·Respondents.

FOGG, J. pro tem.*—Salvatore and Nita Daluiso filed a complaint to quiet title to real and personal property against Harley R. Boone. They alleged they were the owners of approximately 40 acres of land known as Melody Ranch and located at 399 Reche Canyon Road in Riverside County. The real property was described as the Northeast quarter of the Southwest quarter of Section 12, Township 2 South of Range 4 West, San Bernardino Base and Meridian. Their complaint also alleged that the land had been continuously cultivated since 1918 and improved with residential and other buildings, boundary and property line fences, and a water well with electric pump. It was also stated that defendant Boone owned land surrounding this 40 acres and that he disputed their boundary and property line fences and claimed an interest in the Daluiso land and improvements. Plaintiffs prayed that defendant be adjudged to have no interest in their land and improvements thereon, and that he be enjoined from claiming any such interest, and further that the court decree that plaintiffs' boundary and property lines and fences are true and correct. Defendants filed an answer admitting that plaintiffs were the owners of certain real property described by metes and bounds, and that they owned land adjoining plaintiffs' parcel on all four sides, and that they disputed the location of plaintiffs' boundary and property lines and fences at any place outside the boundaries of the metes and bounds description. All other material allegations of the complaint were "denied." Defendants also filed a cross-complaint to quiet title which was later stricken by the trial court on motion of plaintiffs.

Defendant and his wife Lavinia M. Boone subsequently filed a separate action to quiet title against plaintiffs, to which

*Assigned by the Chairman of the Judicial Council.

plaintiffs filed an answer denying the allegations of this complaint except insofar as their property was described and claimed in the first action (Riverside County Superior Court No. 76125).

In the interests of clarity, the parties will be hereafter referred to as Daluiso and Boone.

Both actions were consolidated for trial and tried together, with one judgment and one set of findings and conclusions of law being signed by the trial judge. This is an appeal from this judgment although it is erroneously treated by Boone as an appeal from adverse judgments in two separate actions.

Boone's contentions on appeal may be summarized as follows: (1) The evidence is insufficient to support the judgment for Daluiso and requires a judgment for Boone; (2) the judgment is void because the description is impossible, wrong and uncertain.

A review of the evidence reveals the following: On February 17, 1918, the United States issued a land patent to one Orazio Finochiaro for the land described as: "The northeast quarter of the southwest quarter of section twelve in township two south of range four west of the San Bernardino Base and Meridian, California. containing forty acres, according to the Official Plat of the Survey of the said land, returned to the General Land Office by the Surveyor General of the United States of America." This patent was duly recorded in both Riverside and San Bernardino Counties. The first owner fenced the 40 acres and planted some trees. On June 20, 1920, he and his wife deeded this property to Ferdinando Daluiso, and this deed was recorded in Riverside County. The second owner lived with his wife on the property until and after judgment herein. He planted trees, farmed it, constructed and operated a winery thereon for awhile, and improved it with a residence, well and a windmill.

· On December 4, 1934, Ferdinando Daluiso and his wife deeded the property (hereinafter referred to as Melody Ranch) to their son, Salvatore Daluiso. This deed was also recorded. Thereafter Salvatore married Nita and improved the property more by constructing a paved road from the highway, two houses, a bridge over the culvert at the entrance, a warehouse, and an 11,000 gallon water tank.

In 1946 Alfred Maybell and his wife acquired all the land surrounding the Melody Ranch. Before doing so, Maybell testified that he inspected this property and the Melody Ranch and plainly saw its posts and fence lines. Daluiso told him

these were the property lines, and Maybell said he accepted them as such, and also relied on the government survey.

Daluiso testified that the location of the posts and fence lines were never changed from 1920. The Melody Ranch was wire-fenced on all sides except a small portion on the west side by the Reche Canyon Road, according to all the witnesses.

In June 1947 the Maybells conveyed all their property to the Boones by two grant deeds which were duly recorded. Before buying this property, Boone inspected the property and saw the Melody Ranch posts and fences.

On November 30, 1949, Daluiso sold a parcel of 30 x 500 feet to one E. J. Stauch. This property was on the west line of the Melody Ranch. Stauch enclosed it with a fence, using the west line fence of the larger property as one side, built a small house and dug and installed a well with an electrical pump. He sold this parcel back to Daluiso and his wife on December 8, 1954, after Boone had refused Daluiso's suggestion that he buy it.

On December 9, 1958, Daluiso deeded all the Melody Ranch to himself and his wife as joint tenants, which deed was also recorded.

At the trial Boone testified he had been a real estate broker for 32 years, and he observed all the improvements made on the Melody Ranch by Daluiso and Stauch from the time he acquired his adjoining property. He also stated to Maybell after riding horseback around the property that he had "seen all I want now." Maybell did not show the property to Boone, nor point out or discuss the fence lines with him.

The taxes on the Melody Ranch were paid by the elder Daluiso from 1920 to 1934 and by his son thereafter.

Daluiso testified that the first time Boone claimed that the fences were not on the property was when he (Boone) pointed out a marker found by the county surveyor and located about in the center of Reche Canyon Road and to the east of the west fence line. Also, Daluiso stated he always assumed the boundary line of his property to be marked by the fence lines.

In October 1955 Boone engaged C. W. Pump, a licensed civil engineer, to make a survey of section 12. About that time Boone had told Dalusio that he and Woodson (a neighbor) were going to have their land surveyed and asked if he would like to participate. Daluiso answered that he would "take care of my end of it" but he did not know who was going to do the survey until after Pump had started the work. Daluiso also testified that he paid $200 as his share of Pump's bill after the survey was completed in April 1956, but that he

never stated he would accept whatever Pump found in the survey as his proper boundary line.

Pump testified in detail as to the work he did in making his survey. This testimony was received into evidence over Daluiso's objection. He described the efforts he made to locate the quarter corners of section 12 and also the other matters upon which he relied, including the U. S. Government field notes which he never saw until they were received in evidence at this trial, but which Boone had seen at the Riverside County Courthouse and copied certain information therefrom for Pump. Pump also stated that Boone had gotten other information for him concerning section 12 from the Riverside County Surveyor's office and also that Boone had gone into the field with him to assist by pointing out certain corner points which he accepted. Pump did not talk to anyone else concerning monuments or points. His survey was completed in early 1956, and Pump delivered it to Boone for recording. This survey was refused recordation in 1958 because the Riverside County Surveyor would not accept his west quarter corner. Pump made certain corrections and changed his lines in order to comply with the requirement of the county surveyor for determination of the location of the west quarter corner. After doing some additional investigation without ever contacting Daluiso, his record of survey was accepted by the county surveyor and recorded on July 6, 1961.

After a copy of the survey was received by Daluiso in 1956, certain conversations occurred between the parties. Each has a different version of what was said, but generally they talked about moving the fence lines or in the alternative exchanging sections of land so that the Daluiso improvements which the Pump survey reflected were located on Boone's land could remain in Daluiso's possession. Nothing came of these conversations, and these lawsuits were eventually filed.

The trial court found in favor of Daluiso on all material issues, which findings may be summarized as follows:

(1) That Daluiso and predecessors-in-interest owned and were in possession of or entitled to possession of the Northeast quarter of the Southwest quarter of section 12 as described in the U. S. Government patent since February 7, 1918;

(2) That said land was improved and fenced since 1918, with Boone's knowledge thereof;

(3) That Boone claimed an interest in the Daluiso land and disputed the location of Daluiso's property lines and fences;

(4) That Boone's claims were unfounded and that Dalui-so's boundary and property lines were correct;

(5) That the Melody Ranch property was at all times since 1918 "bounded and fenced with posts, wood and wire fences and the said property so enclosed thereby," and "continuously, openly and notoriously occupied" and "claimed by" the Daluisos and their predecessors-in-interest, with all real property taxes paid by them;

(6) That Boone's claim that the Daluiso fences were not on their property, based on the Pump survey which was not binding upon Daluiso, was without merit; that the Pump survey was "not competent"; that Pump was "not qualified to make said survey"; and that Boone had no right to move the fences and improvements placed by Daluiso and his predecessors-in-interest.

Based upon these findings and appropriate conclusions of law, the trial judge signed a judgment quieting the Daluisos' title to:

". . . that certain real property located on Reche Canyon Road, Riverside County, California, generally known by the name of Melody Ranch, generally bearing the street address of 399 Reche Canyon Road, Riverside County, California, consisting of approximately 40 acres, legally described as follows:

"The northeast quarter of the southwest quarter of Section 12 in Township 2 South of Range 4 West of the San Bernardino Base and Meridian, California, containing 40 acres, according to the Official Plat of the Survey of the said land, returned to the General Land Office by the Surveyor General of the United States of America,

"and as bounded and fenced by the posts and wood and wire fences at the places and on the lines located on said real property and maintained and claimed by plaintiffs, said fences being the property and boundary line fences of plaintiffs' said real property, together with all improvements thereon and within said enclosure."

The judgment also ordered Boone to replace the Daluiso posts and fences where they had been and in the same condition as prior to their removal by Boone. Additionally, the judgment quieted title in the Boones to their adjoining property.

I

▮ "Boone first attacks the sufficiency of the evidence to support this judgment.

It hardly requires any citation of authority for the well-settled rule that an appellate court may only consider whether or not there is any *substantial* evidence, contradicted or uncontradicted, which will support the findings of the trial court. We may not weigh the evidence, nor is it within our province to analyze any conflicts in the evidence. (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557]; *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].)

Likewise, it is not our responsibility to search the record in order to determine whether it contains any evidence to sustain a contention made by either party to the appeal.

Boone, as the appellant, is required to demonstrate that there is no substantial evidence to support the findings he attacks. (*Kraemer* v. *Superior Oil Co.*, 240 Cal.App.2d 642, 646 [49 Cal.Rptr. 869].) We find that Boone has not sustained this burden.

The evidence comprising the original U.S. patent, the subsequent deeds in the chain of the Daluiso title, the payment of all tax bills, and the uncontradicted testimony of the various witnesses as to the long-continued, open and notorious adverse possession and use of the property as delineated by the fence lines by the Daluisos and their predecessors-in-interest, clearly support the trial judge's findings that Daluiso was entitled to a judgment quieting title to the Melody Ranch either upon the basis of legal title or title by adverse possession.

All of the necessary elements to prove adverse possession were established by the aforementioned evidence. (Code Civ. Proc., § 322 et seq.; *Sorensen* v. *Costa,* 32 Cal.2d 453, 461-467 [196 P.2d 900].) Also, there was ample proof of the Daluiso's derivation of legal title to this 1/16 section of land clear back to the U. S. Government patent issued in 1918.

Boone complains that there was no express or explicit finding that the Daluisos were the owners of all the property "within the fence lines." However, the trial court expressly found that the Daluiso property was "bounded and fenced" by these fences and the "said property so enclosed thereby" and that Boone claimed without right the Daluisos' "real property . . . so within the said fences and all improvements thereon." Findings should be literally construed to support the judgment of the trial court (*Holliday* v. *Holliday,* 230 Cal.App.2d 622, 627 [41 Cal.Rptr. 274]) and, therefore, we see no justification for Boone's complaint in this respect.

■ Great reliance is placed by Boone upon the testimony of Mr. Pump as to his survey in disputing the sufficiency of the Daluiso evidence. However, the trial judge found the Pump survey was invalid, or at least not entitled to much weight. His determination as to the weight of the evidence or the credibility of the witness Pump was exclusively within the province of the trial court (*Perdue* v. *Hopper Truck Lines,* 221 Cal.App.2d 604, 607 [34 Cal.Rptr. 640]) and is, therefore, binding upon this court.

Assuming, arguendo, that the findings were insufficient to support a judgment predicated upon legal title or title by adverse possession, this judgment can be upheld upon another theory, namely, title by agreed boundary. In the case of *Ernie* v. *Trinity Lutheran Church,* 51 Cal.2d 702, 707 [336 P.2d 525], the Supreme Court stated: "The requirements of proof necessary to establish a title by agreed boundary are well settled by the decisions in this state. [Citations.] The doctrine requires that there be an uncertainty as to the true boundary line, an agreement between the coterminous owners fixing the line, and acceptance and acquiescence in the line so fixed for a period equal to the statute of limitations or under such circumstances that substantial loss would be caused by a change of its position." This decision was followed and the same theory applied in *Kraemer* v. *Superior Oil Co., supra,* 240 Cal.App.2d 642. It is true that this theory of the case was not specifically argued in the trial court, but it seems to be clearly within the scope of the pleadings and evidence. Therefore, to accept this theory would not violate the rule that fairness to the court and opposing counsel requires adherence on appeal to a specific theory on which a case is tried. (*Hewko* v. *G. I. Trucking Co.,* 242 Cal.App.2d 738, 743 [51 Cal.Rptr. 775].)

We conclude, therefore, that there was substantial evidence to support the findings and judgment of the trial court.

## II

■ Boone's contention that the judgment is void because it contains a description which is "impossible, wrong or uncertain" is without merit. Two of the cases cited by Boone to support his position are factually distinguishable, and the third one appears to support the judgment herein.

In *People* v. *Rio Nido Co., Inc.,* 29 Cal.App.2d 486 [85 P.2d 461], an action was brought by the state to quiet title to lands in a subdivision which were claimed to have been dedicated as a public park. This claim was based upon a prior judgment

which declared in part: "That all parks in the valleys of division 2 and 3 of Rionido . . . were on the 8th day of the said October, 1906, dedicated to the public use . . . ; that said park in said Division 2 is filed in Map 2 of Eaglenest, volume 19 at page 19. . . ." (Page 488.) In reversing the judgment for the state, the Supreme Court stated that in addition to the fact that the county assessed and collected taxes on this land from individuals that the judgment was defective in failing to describe this land with sufficient certainty. The court also examined the map referred to and found that no park site was designated and, therefore, since the county supervisors had merely accepted this map by resolution, there was no acceptance of any dedicated park. Thus, there was no legal description at all in this judgment.

In *City of Redlands* v. *Nickerson,* 188 Cal.App.2d 118 [10 Cal.Rptr. 431], the city sued to quiet title to a vacated diagonal street adjoining a small adjacent triangular parcel of property. The first judgment for the city, which had become final, was followed by an amended judgment. The appellate court held that the first judgment was a nullity because it did not contain any description of the property, merely referring to "the said title of the said plaintiff in and to the said real property," without any description of the title or real property indicated. Again, this case is not in point since there was no description at all in the judgment.

The third case cited by Boone is *Newport* v. *Hatton,* 195 Cal. 132 [231 P. 987]; it involved a suit by six children of Sarah Newport, one of the defendants, to establish ownership and remove a cloud on their title arising out of a purported and fraudulent tax sale and a fraudulent judgment obtained while they were minors. They contended that the judgment was void because: (1) It was procured through extrinsic fraud; (2) the decree did not contain an adequate description by which the property could be identified or located. Although a judgment of dismissal after the sustaining of a demurrer without leave to amend was reversed on appeal, the Supreme Court found against the contention of uncertainty in the description of the real property. The land was described in the judgment based upon the assessment and tax deeds as the north half, consisting of 80 acres, and the "fractional south ½" consisting of 75 acres, of the northwest quarter of section 29. There was no description as to which 75 acres of the south ½ was involved. In concluding that this description was sufficiently certain, the Supreme Court said, at page 156:

"Applied to judgments, the rule is that the description in a judgment affecting real property should be certain and specific, and that an impossible, wrong, or uncertain description, or no description at all, renders the judgment erroneous and void. (33 Cor.Jur., p. 1209, par. 147.) The same work is authority for the declaration that the judgment may be aided by intendments and additional data drawn from the pleadings and other parts of the records, or even, in some cases, by extrinsic documentary evidence. We do not see how a judgment can be pronounced a nullity for uncertainty of description unless the court can see that nothing is described. Those claiming under it must rely on the description, it is true, but whether or not the description is defective must be tested by rules of evidence ordinarily applied to the subject."

It is true that a judgment affecting title to real property must be as clear and explicit as a deed of conveyance of real property. (*People* v. *Rio Nido Co., Inc., supra,* 29 Cal.App.2d 486, 489.)

Also, it has been held that "[A] description of real property is generally sufficient which enables the identity of the premises to be established, or which furnishes the means of designating the property sought to be conveyed." (*Estate of Wolf,* 128 Cal.App. 305, 309 [17 P.2d 1052].)

In 41 Cal.Jur.2d 589, 590, the general rule is stated as follows: "The description in a judgment affecting real property should be certain and specific so that the property can be identified and established with sufficient certainty, by application of the ordinary rules of evidence, to define the rights of parties."

In *Wagnor* v. *Blume,* 71 Cal.App.2d 94, 103 [161 P.2d 1001], the foregoing rule was further elaborated by a holding that if a competent surveyor can take the description and locate the land on the ground, with or without the aid of extrinsic evidence, the description is sufficient.

Applying these principles to the case at bench, the judgment was sufficiently certain and explicit. It set forth the legal description as contained in the original land patent, stated the street address, and described the existing fences as the specific boundary lines, which fences had been maintained and located in the same places ever since 1918 and until moved by Boone, according to the undisputed testimony of the witnesses.

The judgment is affirmed.

Kerrigan, Acting P. J., and Tamura, J., concurred.