[L. A. No. 19116. In Bank. Nov. 28, 1944.]

BERTHA CROWE et al., Appellants, v. R. J. McBRIDE, Respondent.

Harry P. Sweet for Appellants.

Gray, Cary, Ames & Driscoll for Respondent.

GIBSON, C. J.—Plaintiffs, husband and wife, brought this action for damages for personal injuries suffered by the wife (hereinafter called plaintiff) from the ''explosion'' of an electric therapeutic light bulb. Defendant, a licensed chiropractor, had been treating plaintiff for arthritis and neuritis over a number of years. The treatment consisted in part of exposure to the rays of certain therapeutic lamps in defendant's office. While taking one of these treatments plaintiff lay on a table with her back bared and exposed to a lamp which defendant had fixed in a position about two and one-half feet above her. Defendant then left the room, leaving plaintiff unattended. After she had been under the light about fifteen minutes, the bulb broke or exploded without warning, the hot glass falling upon plaintiff's back and other parts of her body causing severe injuries.

At the close of plaintiffs' evidence a motion for a nonsuit was granted on the ground that plaintiffs had failed to prove negligence. Plaintiffs appealed from the judgment, contending that the evidence was sufficient to permit a finding of negligence.

In considering the propriety of the nonsuit, we must accept the evidence most favorable to plaintiffs and disregard that which is unfavorable. ■ The testimony of the defendant, who was called to testify under section 2055 of the Code of Civil Procedure, falls within this rule and is to be treated as evidence in the case insofar as it is favorable to plaintiffs. (*Anderson* v. *Stump,* 42 Cal.App.2d 761 [109 P.2d 1027]; *Dempsey* v. *Star House Movers, Inc.,* 2 Cal.App.2d 720 [38 P.2d 825]; *cf. People* v. *Mahoney,* 13 Cal.2d 729 [91 P.2d 1029] [motion for directed verdict]; *Smellie* v. *Southern Pacific Co.,* 212 Cal. 540 [299 P. 529].)

Defendant testified that the lamp was an infra red, deep therapy lamp and that the bulb was a ''thousand watt General Electric heating unit; it was one of the thousand watt electric bulb—daylight blue bulbs.'' He also described it as a ''Standard Therapeutic bulb.'' Defendant's brief refers to it as a vacuum bulb, but plaintiffs argue that it might have been a vapor lamp filled with gas under pressure. There is no evidence thereon, nor does the record disclose the nature of the heating element or device within the bulb.

The bulb was in a large dome-shaped aluminum reflector on a ''spring trolley'' which permitted it to be moved up and down, but a chain was attached so that it could go down no farther than to a point about 30 inches above the table.

Defendant testified that he had used the bulb for approximately two years before the accident; that he had a number of the same type which he used as frequently as ten times a day each; that some operated as long as five years before burning out, but that one had burned out within ten minutes; that the lamp was a standard make, with one hundred and fifty or two hundred in use in the locality; that he had never heard of a bulb exploding; and that it was customary to use the bulbs until they burned out.

Defendant's own testimony shows that little if any inspection was made of the bulb. The ''Electro-Therapy Products man'' last inspected the equipment between six months and a year prior to the accident, but it does not appear that this included an examination of the bulb. All that defendant did was turn it on and see that it was functioning and in its proper place, explaining that ''there is no inspection I could make on it. It is made just like a light bulb; you cannot open them up and look at them; all that you can do is to turn it on and off; the General Electric Company examines them when they make them. I have no possible way of examining it.'' He said he had noticed no discoloration in the glass but stated he had never looked at the bulb ''with that thought in mind,'' adding that the bulbs got black after they had burned out, not before. When asked if he had ever cleaned the bulb he replied: ''I do not touch it at all. The lamp unit, why, yes, we clean that; we dust it every week . . . but that is not the bulb, that is the lamp unit.'' He also stated that he did not take the bulb out of the socket.

The evidence shows that the lamp had no screen on it,

although defendant did have screens on his other lamps. Plaintiffs contend that the trier of fact could reasonably conclude, under the circumstances of this case, that defendant's failure to use a screen or other protective device constitutes negligence. Defendant replies, first, that there is no evidence that he could have used a screen without interfering with the use of the lamp or that such a screen would have served to prevent the accident. He testified that prior to the accident he had used screens on the other lamps, although for the purpose of controlling the rays, and he stated, in response to a question by his own counsel, that after the accident he had used these screens as a protective measure. From this evidence the trier of fact could reasonably have inferred that the screens would not have interfered with the lamp and that they would have afforded at least some protection in the event of damage to the bulb. Defendant also conceded in his brief that if a screen had been used the injuries might not have been so serious ''since only the smaller particles of glass would drop through the screen.'' The fact that an available safety device would not entirely prevent an accident would not, of course, excuse defendant from employing it to minimize injuries.

Defendant contends that there is no evidence of any similar explosions having occurred or that any manufacturer has recommended screens as a precautionary measure, and that, therefore, he had no reason to anticipate such an accident or take precautions to avoid it. We cannot hold as a matter of law, however, that defendant had no duty to take such precautions, and, under the circumstances of this case, it is our opinion that defendant's use of the lamp without a screen presented a question for the trier of fact upon the issue of negligence. Glass articles such as electric light bulbs are fragile and are frequently broken from many and varied causes. The 1000-watt bulb involved in this case was an exceptionally large one in comparison with an ordinary light bulb; it was designed to generate heat; and it was placed approximately 30 inches above the patient's bared back. The likelihood of serious injury in the event of breaking of the bulb, whatever the cause, was obvious and was much greater than would be expected from the breaking of an ordinary illuminating lamp. As has often been said, the care required must be in proportion to the danger to be avoided and the consequences that might reasonably be anticipated. (See *Hatzakorzian* v. *Rucker-Fuller Desk*

*Co.,* 197 Cal. 82, 98 [239 P. 709, 41 A.L.R. 1027] ; 19 Cal.Jur. 579.) The trier of fact might reasonably have concluded that the defendant should have anticipated that the bulb might break or be broken and that he did not take the precautions reasonably to be expected in order to avoid or minimize injury.

▮ The fact that the bulb broke or exploded in an unusual manner and that the exact cause of the accident is unknown may be considered by the trier of fact, but it does not necessarily follow that defendant is free from liability as a matter of law. As said in the Restatement, Torts, section 435: "If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable." Furthermore, accidents of this type are not entirely unknown, as at least two cases involving explosions of light bulbs have reached appellate courts. (See *Hughes* v. *Atlantic City & S. R. Co.,* 85 N.J.L. 212 [89 A. 769, L.R.A.1916A 927] ; *Russell* v. *St. Louis & S. F. Ry. Co.* (Mo.App.), 245 S.W. 590.)

The evidence of negligence is sufficient to present a question for the trier of fact, and, therefore, the nonsuit should not have been granted.

The judgment is reversed.

Shenk, J., Curtis, J., Edmonds, J., Carter, J., Schauer, J., and Traynor, J., concurred.