POX, P. J.
 

 This is an appeal from a judgment against plaintiffs in an action brought pursuant to section 377 of the Code of Civil Procedure, to recover damages for the wrongful death of their son.
 

 The evidence, viewed in the light most favorable to the respondents, discloses the following factual picture: During the evening of October 8, 1955, a series of altercations occurred involving several different groups of teen-age boys. These altercations involved not only physical encounters between the various individuals and groups but also the use of several automobiles, at least one of which was damaged. The plaintiffs’ deceased son, Thomas Studer, entered upon this scene
 
 *438
 
 at approximately 11:30 p. m., following a request by one of his friends that he assist one of the groups involved. Studer, driving a 1950 Ford which belonged to another boy, and which contained five other boys, proceeded to a spot near a carnival which had been the scene of some of the previous disturbances. The objects of the boys was to lie in wait for another car, to wit, the Hickman Mercury. While the boys were thus “staked out” for the Hickman car, a Chevrolet driven by defendant Plough and containing defendants Kenneth Morrill, Boy Arnold and Gilbert Strand came along. They recognized the parked Ford, one of whose occupants earlier that evening had hit the Hickman Mercury with a rock. The Plough car stopped and the occupants of the two cars engaged in a fight in which a 26-inch bayonet was employed. Suddenly, someone yelled “cops,” and the groups dispersed in opposite directions in their respective automobiles. Two of the boys from the Studer ear were left at the scene of the fight so that only four were in the machine when he fled. The Studer car proceeded on Pendleton Avenue in Lynwood, with Studer driving, and turned north on Atlantic Boulevard, traveling 40 to 50 miles per hour. Plough, in the Chevrolet, having observed the Studer car on Pendleton, turned north on Atlantic Boulevard in pursuit of it. After some four blocks, the Plough car caught up with the Studer ear and pulled alongside on the right. The occupants of the Studer car were crouched down so that Plough could see only the upper portion of the driver’s face and head. Plough yelled to the boys in the other car to pull over and stop. This they did not do. The two ears continued side by side for a distance of between a block and a half and two blocks, during which time they were weaving back and forth in such fashion that they came in contact with one another. This contact was referred to as a “collision” though neither of the cars sustained any particular damage. During this period Plough struck the Studer car with the bayonet that had been used in the earlier fight. Plough gave the following account of what happened with respect to the movements of the two cars and the use of the bayonet:
 

 “Q. Describe how the collision occurred. A. Well, at that time, his [Studer’s] ear came closer to mine, as if it swerved, and I swerved the same to the right—he swerved to the right and then he went back to the left, and I went back to the left, and we got within about a foot from the other one’s car. And at that time I reached out the window with the bayonet and hit the corner post of the windshield of the right-hand
 
 *439
 
 side with the bayonet approximately two or three times. And then he swerved into the side.”
 

 Under further questioning, Plough testified that Studer first swerved in his direction, coming “within a few inches” of his car,- that he [Plough] at first “swerved away from him”; that Studer then swerved in the opposite direction and Plough followed. It was at this point that Plough banged on the Studer car with the bayonet. During these maneuvers both cars were out of their proper lanes of traffic. It was following this that Studer “sideswiped” the Plough car, according to Plough's testimony. Plough observed Studer's swerving toward him and felt “a little rock” of the impact. Immediately after the cars were involved in this incident Studer made “a left turn rather sharp” and went across the double line.
 

 Upon crossing the double white line, the Studer car met a car head-on coming south on Atlantic. It was in this collision that Studer was killed. The defendants did not stop and return to the scene of the crash, nor did they notify the police. The next day they attempted to alter the appearance of the Chevrolet.
 

 The car driven by Plough was owned by the defendants Graves and McGrew, and Plough was driving it with their consent. Plough was a minor at the time and his mother, defendant Myrtle Shelley, had signed for the issuance of his driver’s license.
 

 Plaintiffs’ second amended complaint alleges as a first cause of action that the death of plaintiffs ’ son was due to the negligence and carelessness of Plough, Morrill and the other two occupants of the Plough Chevrolet; and, for a second cause of action, that the conduct of the defendants was “wanton, wilful and malicious and done with the intent to damage the deceased, Thomas William Studer.”
 

 The answers of defendants McGrew, Stroud, Plough and Shelley denied the allegations of the complaint and affirmatively alleged the defenses of contributory negligence, unavoidable accident and the negligence of the plaintiffs. The answer of defendant Graves denied the allegations of the complaint and affirmatively alleged that Studer was eontributively negligent; that the accident was the result of a series of encounters deliberately entered into by Studer, and that he assumed the risks incident thereto.
 

 The court found that both Plough and Studer were operating their cars in a negligent manner at the time of the acei
 
 *440
 
 dent; that the negligence of Plough was one of the proximate causes of the accident; that the negligence of Studer was one of the proximate causes of the accident; that Studer and Plough “were at the time of the accident and for a period of approximately 30 minutes prior thereto, engaged in a mutual affray and with full knowledge of the dangers incident thereto and with complete indifference to the dangers and injuries probable from their actions to themselves and to the other occupants of their respective automobiles”; that Studer was guilty of wilful misconduct which proximately contributed to his death; and “that the contributory negligence which was a proximate cause of the death of Thomas William Studer, is a bar to any recovery by” his parents.
 

 As conclusion of law the court determined that (1) Studer was guilty of negligence which proximately contributed to his death; (2) Studer was guilty of wilful misconduct which proximately contributed to his death; (3) Studer’s contributory negligence was a bar to recovery by the plaintiffs; (4) Studer assumed the risk of being injured in a mutual affray and this assumption of risk was a bar to recovery by plaintiffs; and (5) defendants were entitled to judgment. It is from this judgment that plaintiffs have appealed.
 

 In seeking a reversal plaintiffs make three basic arguments: (1) that there is no evidence to support any of the findings adverse to their right to recover; (2) that Plough was guilty of wilful misconduct as a matter of law and the trial court erred in failing to so find; and (3) that the court erred in admitting evidence of the earlier fight between the two groups.
 

 Initially, it should be noted that it is essentially the responsibility of the trial court to evaluate the conduct of the parties involved in this affair, and that in so doing it has the right to draw reasonable inferences from the evidence it accepts as trustworthy. Also, under accepted appellate procedure, this court cannot give credence to testimony the trial court has rejected nor may we draw inferences contrary to those drawn by the trier of the facts.
 

 With these principles in mind we shall first inquire whether there is any substantial evidence to support the finding that young Studer “was guilty of intentional and wilful misconduct which proximately contributed to his death.” The guiding principles in determining what constitutes wilful misconduct are aptly stated in
 
 Emery
 
 v.
 
 Emery,
 
 45 Cal.2d 421 [289 P.2d 218]. At page 426 the court said: “ ‘Wilful mis
 
 *441
 
 conduct depends upon the facts of a particular case and necessarily involves deliberate, intentional or wanton conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom [Citations]’
 
 (Norton
 
 v.
 
 Puter,
 
 138 Cal.App. 253, 258 [32 P.2d 172], quoted with approval in
 
 Parsons
 
 v.
 
 Fuller,
 
 8 Cal.2d 463, 468 [66 P.2d 430].) ‘Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a
 
 probable
 
 (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its
 
 possible
 
 result. ’
 
 (Meek
 
 v.
 
 Fowler,
 
 3 Cal.2d 420, 426 [45P.2d 194].) ”
 

 The record establishes that only a few minutes before this fatal accident these two groups had been engaged in what might fairly be termed a gang fight which had grown out of the belief that someone in the Studer car had damaged another ear with a rock earlier that evening. The fight had been suddenly halted when someone yelled "cops." This was the signal for the two groups to make their getaway. But the fight had not yet produced a decisive result. In just a few minutes both cars were traveling north on Atlantic Boulevard at a high rate of speed. The occupants of the Plough car, upon coming alongside the Studer car, demanded that the driver pull over and stop. This he refused to do. Instead, he swerved toward and within a few inches of the Plough car, which at first swerved away. Thus the fight between the two gangs was renewed—this time using their cars as weapons and with Studer making the initial thrust. Then, as might be expected, Plough retaliated by swerving his car toward his adversary and came close enough to hit it with the bayonet. The Studer group, not to be thus subdued, swerved their car again toward the Plough car, this time actually sideswiping it. In view of the previously interrupted fight and the dangerous and precipitous acts of Studer in swerving his ear toward the one driven by Plough the trial court could reasonably infer that he intentionally made the movements with his ear that he did make and that he made them with a wanton and reckless disregard of their
 
 possible
 
 result. These inferences furnished ample support for the challenged finding.
 
 (Emery
 
 v.
 
 Emery, supra.)
 
 We need go no further on this question.
 
 (Primm
 
 v.
 
 Primm,
 
 46 Cal.2d 690, 693 [299 P.2d 231].) It is apparent that Studer’s wilful misconduct was a
 
 *442
 
 proximate cause of the collision that resulted in his death. It follows that plaintiffs are not entitled to recover.
 

 The difficulty of plaintiffs’ position on this phase of the case is that they would have us reevaluate the evidence and draw inferences contrary to those drawn by the trial court. This we are not at liberty to do.
 

 Plaintiffs argue that Plough was guilty of wilful misconduct as a matter of law and that the court erred in not so finding. Since Studer was guilty of wilful misconduct which was a proximate cause of his death it becomes immaterial whether Plough was also guilty of such conduct, for in any event plaintiffs are not entitled to judgment.
 

 Furthermore, as previously pointed out, the incidents involving the driving of the two cars on Atlantic Boulevard were simply a continuance of the gang fight these boys had been engaged in a few minutes earlier. That fight had not run its course. It had been abruptly interrupted by someone yelling “cops.” When the two groups saw each other, the fight was on again. Thus we have Studer, as the trial court found, voluntarily engaging in a gang fight with full knowledge of the dangers incident thereto and with complete indifference to such dangers and probable injury. In such circumstances he was, in the language of the trial judge, “asking for it.” Thus he assumed the risk incident to his participation in this unfortunate and dangerous affair. (See
 
 Prescott
 
 v.
 
 Ralphs Grocery Co.,
 
 42 Cal.2d 158, 161-162 [265 P.2d 904].)
 

 Plaintiffs argue that the trial court erred in that it improperly admitted and relied upon evidence pertaining to the conduct of the parties earlier in the evening. Defendants contend that plaintiffs waived any objection to this evidence on appeal by failure to object at the trial. Plaintiffs point out that they objected to questions pertaining to the prior altercations early in the trial. This objection was sustained by the court for the reason that it was
 
 improper cross-examination in the light of the direct examination.
 
 However, later in the trial, the court questioned the defendant Morrill and elicited testimony regarding earlier fighting. Plaintiffs did not object to this line of questioning. Subsequently, plaintiffs’ own witness, a police officer, testified fully regarding his investigation of all the events leading up to the fatal accident. No motion was made by plaintiffs to strike any of the officer’s testimony. Another witness for the plaintiffs also testified to the prior events on direct examination and no motion was made to strike any of his answers. It is elementary that
 
 *443
 
 evidence produced without objection and without a motion to strike may not be objected to for the first time on appeal. Plaintiffs assert, however, that the evidence elicited by the trial court which opened the door to the whole inquiry regarding the prior events was subject to the objection lodged earlier in the trial and that an objection to a line of questioning need not be repeated. In the instant case, the plaintiffs’ only objection to evidence relative to the prior altercations was sustained on the ground that it was not proper cross-examination. The subsequent questioning of Morrill by the court was in the nature of direct examination and failure of the plaintiffs to object constituted a waiver of the objection. But plaintiffs argue that the resumption of this line of questioning by the court served as a reversal of its previous ruling. This was not, however, a reversal of the previous ruling but was rather a direct examination by the court and thus not within the scope of the prior ruling that the questions were not proper cross-examination. Since no proper objection was made, plaintiffs may not challenge the admission of such evidence on appeal.
 
 (Huntoon
 
 v. Hurley, 137 Cal.App.2d 33 [290 P.2d 14].)
 

 The judgment is affirmed.
 

 Ashburn, J., and Herndon, J., concurred.
 

 A petition for a rehearing was denied April 26, 1960, and appellants’ petition for a hearing by the Supreme Court was denied June 2, 1960. Peters, J., was of the opinion that the petition should be granted.