[Civ. No. 25157. Second Dist., Div. One. Dec. 20, 1961.]

HELEN M. LEVIZON et al., Plaintiffs and Appellants, v. HARRY HARRISON, Defendant and Respondent.

276

James G. Butler for Plaintiffs and Appellants.

Moss, Lyon & Dunn, Robert C. Nye and Henry F. Walker for Defendant and Respondent.

LILLIE, J.—The present action sought damages for alleged wrongful death. On February 10, 1959, the decedent went to the defendant's premises to purchase an automobile part; the part, a universal joint, had to be removed from an abandoned automobile, a 1950 Plymouth. It was necessary for decedent to get under the Plymouth; while under the car and after it had been jacked up, the car fell on him and he was killed. The complaint was in two counts: The first being predicated on negligence, the second on wanton and reckless misconduct. A motion for nonsuit was granted as to count two; thereafter the cause was submitted to the jury on the negligence count and a verdict in defendant's favor was returned. Plaintiffs claim

that the motion for nonsuit was improperly granted; they also contend that the trial court erred in refusing to give two instructions on the negligence count.

Preliminarily, it appears that the motion for nonsuit was made at the conclusion of plaintiffs' case in chief; it was then taken under submission to permit further study by the court of the authorities cited pro and con; subsequently the motion was granted after all the evidence for each side was in. While this procedure was rather unusual, it is the law that a nonsuit can be granted after the evidence for both sides is closed (*Estate of Morey*, 147 Cal. 495, 506 [82 P. 57]); also, apparently by agreement of counsel, the trial continued to conclusion before the court's ruling (see *Croslin* v. *Scott*, 154 Cal.App.2d 767 [316 P.2d 755]). Further, by way of prefatory statement, defendant concedes that where a nonsuit is involved, the evidence must be viewed most favorably to the plaintiffs. Under this general rule, which is applicable to actions based on wilful misconduct (*Hallman* v. *Richards*, 123 Cal.App.2d 274, 278 [266 P.2d 812]), we "must resolve every conflict in the testimony in favor of plaintiffs, consider every inference which can reasonably be drawn and every presumption which can fairly be deemed to arise in support of plaintiffs, and accept as true all evidence adduced, direct and indirect, which tends to sustain plaintiffs' case." (*Coates* v. *Chinn*, 51 Cal.2d 304, 306-307 [332 P.2d 289].) In this connection, testimony adduced pursuant to section 2055, Code of Civil Procedure, is to be treated as evidence in the case insofar as favorable to plaintiffs. (*Crowe* v. *McBride*, 25 Cal.2d 318, 319 [153 P.2d 727].)

Viewed in the light just mentioned, the record reveals the following salient facts: Defendant Harrison purchased and commenced operation of his auto wrecking business about a week or month before the accident; he retained in employment one Heeter who had been employed by the previous owner; Heeter testified that he had worked around auto wrecking yards since 1925. Decedent came to the defendant's premises about noon; he accosted Harrison and stated that he wanted a universal joint for a 1953 Plymouth. Defendant told him there were none in stock; he added that if the decedent would wait, "my man (Heeter) will be back from lunch and he will take it off" a 1950 Plymouth there and then in the yard. Decedent said that he was in a hurry and would take it off himself; defendant replied: "All right, take it off yourself. It will run about three bucks." After showing

decedent where the Plymouth was, defendant gave him a wrench and a jack. According to defendant, he also gave decedent two stands or blocks to put under the car, but the evidence is in conflict in this regard. More than an hour later, defendant walked over to the Plymouth and saw the decedent lying under the car "with his feet sticking out." Heeter, who had returned from lunch, was summoned; he got a bumper jack from his car, and the Plymouth was jacked up at the rear bumper; at that time decedent was dead.

The claim of wilful and wanton misconduct is principally predicated on the testimony of Heeter, who was called under section 2055, Code of Civil Procedure, as defendant's agent; as pointed out in *Crowe* v. *McBride, supra,* 25 Cal.2d 318, 319, such claim may properly be made. Heeter stated that there was a hydraulic jack on the premises in good working condition. The business had only two bumper jacks, one of which "wouldn't hold." According to Heeter, upon returning from lunch, he passed the Plymouth car on which decedent was working; he stopped and asked him what he was doing. At that time he noticed that "there was only one jack under the left front side of the car." He stated further that the car was jacked up "practically about three inches from being to the top of the jack." Q. (by plaintiffs' counsel) "And was that in a precarious position? A. (By Heeter): It was. Q. Pretty dangerous, wasn't it? A. It was a dangerous position to be in. Q. And you didn't get under that car, did you? A. No, I did not. Q. And in all your years of experience, you wouldn't have gotten under that car? A. No."

Heeter was then asked whether there were some stands at the scene, and he replied that there were two—one in the front of the Plymouth and one in the back. Q. (By plaintiffs' counsel) "Now, I want you to just answer my questions. Did you go over and put either of those stands under the car? A. No, I did not. Q. Ordinarily, you would have done it for yourself, isn't that right? A. I would have. Q. The rear bumper was touching the ground at that point, wasn't it? A. On the right side, the right rear bumper. Q. How about the left rear bumper? A. The left, it was up off the ground. Q. On blocks? A. No, there was no blocks under the car at all. It was just sitting on the bumper jack, on the right rear bumper, on the corner, just sitting there in a teetering position." Heeter then left and went to another part of the yard. Later on, he passed the Plymouth where decedent was still working, but he said nothing to him.

As related earlier, the motion for nonsuit as to the second count was taken under submission; thereafter, Heeter was called as a defense witness by defendant's counsel. Referring to his conversation with the deceased, there was this testimony: "I walked up and I looked underneath the car. I asked him how he was doing, and he said, 'O.K.' I said: 'Well, I wouldn't crawl under a car like than.' And he said, 'Well, I'm O.K. I'm all done.'" Upon cross-examination, the following occurred: "Q. Now the car was teetering when you were down there? A. It was. Q. Weren't you kind of afraid when you were kneeling right alongside of it with it teetering like that? A. It went the other way. It wouldn't have went in my direction. Q. How do you know that? A. I've jacked up cars long enough to know which way they'll go. Q. So you weren't worried about yourself? A. Well, it wasn't going to fall on me. I wasn't under it. Q. Didn't you worry about him at all? A. Yes, but did you ever try to tell somebody how to do anything? . . . Q. And didn't you realize that there was a great liklihood [sic] that this man might have been hurt? A. Why, sure there was. Q. Not only a great likelihood, a great degree of probability that he would have been hurt, right? (Objection overruled) A. I don't know . . . Q. Wouldn't you say in your opinion that this was about the worst jacked up car that you have ever seen? A. For a man to crawl under, yes. Q. And, so, based on that wouldn't you say that when you were there looking at this young man under that car that you knew there was a good possibility that he was going to get hurt? A. No, not necessarily a possibility. There was a chance of it falling, though . . ."

California recognizes a type of tortious misconduct which is characterized in the Restatement as "reckless disregard of the safety of another" (Rest. Torts, § 500). "A tort having some of the characteristics of both negligence and willfulness occurs when a person with no intent to cause harm intentionally performs an act so unreasonable and dangerous that he knows, or should know, it is highly probable that harm will result." (*Donnelly* v. *Southern Pac. Co.*, 18 Cal.2d 863, 869 [118 P.2d 465]). Cited in *Mercer-Fraser Co.* v. *Industrial Acc. Com.*, 40 Cal.2d 102, 117 [251 P.2d 955], is this further clarification of the term in *Porter* v. *Hofman*, 12 Cal.2d 445, 447-449 [85 P.2d 447]: " 'Wilful misconduct . . . necessarily involves deliberate, intentional, *or wanton* conduct in doing or omitting to perform acts, with knowledge or appreciateion of the fact, on the part of the culpable person, *that*

*danger is likely to result therefrom.'* ' " ▆ Whether it be an action arising under the California "guest law" (Veh. Code, § 17158) or otherwise, it has been uniformly held that wilful misconduct depends upon the facts of each particular case. (*Emery* v. *Emery,* 45 Cal.2d 421 [289 P.2d 218]; *Mercer-Fraser Co.* v. *Industrial Acc. Com.,* 40 Cal.2d 102 [251 P.2d 955]; *Studer* v. *Plough,* 179 Cal.App.2d 436, 440-441 [3 Cal. Rptr. 785].) ▆ ▆ Accordingly, it has also been said that the intention to do something, or fail to do something, with the knowledge that injury to another will be a probable result of such action or omission is a question of fact (*Ingram* v. *Bob Jaffe Co.,* 139 Cal.App.2d 193, 197 [293 P.2d 132]); too, "The intentional knowing or wanton character of the behavior may be implied from the surrounding circumstances. [Citations.]" (*Fuller* v. *Chambers,* 142 Cal.App.2d 377, 380 [298 P.2d 125].)

Appellants argue that Heeter, defendant's agent, could, and should, have taken one or more affirmative steps, one or more of which would have prevented the fatal accident. Thus, he could have placed the blocks or stands (stated to have been lying there) under the car; he could have provided decedent with the hydraulic jack which was on the premises; he could have ordered the deceased from under the car. Respondent, on the other hand, contends that the position of peril was created by the decedent himself—after jacking up the car, he failed to support the same properly and then crawled thereunder. According to respondent, appellants' argument would mean that "any invitor, such as a department store, observing any one of its patrons doing something which might be dangerous to that patron, is to be charged with wilful . . . misconduct unless the invitor stops or prevents that invitee from causing any injury to himself."

We are not here concerned with hypothetical situations, any number of which might well be conjured up, but only with the particular facts at bar. (*Emery* v. *Emery, supra,* 45 Cal.2d 421, 426.) ▆ As stated in *Porter* v. *Hofman, supra,* 12 Cal. 2d 445, 448, to constitute wilful misconduct " 'there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury. [Citation.]' To this must be added the element . . . of actual knowledge or its equivalent that an injury . . . will be a probable result." ▆ The presence here of two of the three elements just

mentioned, namely, (1) actual knowledge (or its equivalent) of the peril to be apprehended and (2) actual knowledge (or its equivalent) that an injury will *probably* result is supplied by the testimony of Heeter himself. After acknowledging that the Plymouth was "teetering," he was asked if he didn't "realize that there was a great liklihood [*sic*] that this man might have been injured"; he replied: "Why, sure there was." Later, of course, his answers to this crucial question were qualified; but on an appeal from an order of nonsuit the unfavorable portions of testimony under section 2055, Code of Civil Procedure, are disregarded. (*Jeppi* v. *Brockman Holding Co.*, 34 Cal.2d 11, 18 [206 P.2d 847, 9 A.L.R.2d 1297].)

That leaves for consideration the third element of conscious failure to act. It has been said that there need not be a *deliberate* intention to injure (*Van Fleet* v. *Heyler*, 51 Cal. App.2d 719, 729-730 [125 P.2d 586]), for otherwise it would seldom be possible to prove a case of wilful misconduct if it were necessary to have an admission of intent on the part of the culpable person. (*Wright* v. *Sellers*, 25 Cal.App.2d 603, 613 [78 P.2d 209].) Intention, as earlier pointed out, is a question of fact (*Ingram* v. *Bob Jaffe Co., supra,* 193, 197) and therefore may be implied from the surrounding circumstances. We point out, in this regard, that Heeter departed from the immediate scene following his conversation with the decedent and became occupied with certain jobs about the yard; he subsequently passed the decedent but said nothing to him, although there must have been time for further reflection on decedent's perilous position. We think these facts serve to aggravate the situation at bar. In view of the foregoing, it was for the jury to determine whether or not an inference of wilful misconduct should be drawn unless, of course, the defense of contributory negligence and assumption of risk (both of which were affirmatively pleaded) are sustainable.

Contributory negligence, respondent concedes, is not a defense to wilful, wanton and reckless misconduct (35 Cal. Jur. 2d, Negligence, § 214); however, "An actor whose conduct is in reckless disregard of his own safety is barred from recovery against a defendant whose reckless disregard of the actor's safety is a contributing cause of the actor's bodily harm" (Rest., Torts, § 502(2)). Interestingly enough, respondent's answer did not plead any "reckless disregard of his own safety" on decedent's part, the language of the

particular affirmative defense being so couched that contributory negligence, and nothing more, is alleged; any defense on the theory of section 503(2) of the Restatement might, therefore, be deemed to have been waived for failure to specifically so plead. However that may be, it seems to us that both defenses, contributory negligence (even if extended to include reckless misconduct on decedent's part) and assumption of risk presented factual questions. As for assumption of risk, "Although theoretically the defense . . . presents a mixed question of fact and law, particular issues arising thereunder, such as the victim's knowledge and appreciation of the danger, are ordinarily regarded as questions of fact." (35 Cal. Jur. 2d, Negligence, § 281). As for the remaining defense, it is not reckless disregard of his safety *per se* for a person to jack up a 1950 Plymouth without using more than one jack. The critical question is whether the decedent also knew that the car was in the "teetering" position described by Heeter. It is a reasonable inference that he was so engrossed in removing the part desired that he became totally unaware of his peril. True, Heeter testified that he warned the decedent in language already related, but that is only Heeter's testimony which we may disregard for the purpose of this appeal. Opposed to such testimony is the presumption of due care (Code Civ. Proc., § 1963, subd. 4) which was clearly available to appellants here. "The benefit of the presumption has frequently been held available to plaintiffs in wrongful death actions" (*Gigliotti* v. *Nunes*, 45 Cal.2d 85, 93 [286 P.2d 809]); it inures to appellants at bar since they themselves produced no testimony "under circumstances which afford no indication that the testimony is the product of mistake or inadvertence . . . is wholly irreconcilable with the presumption." (*Westberg* v. *Willde*, 14 Cal.2d 360, 365-368 [94 P.2d 590].)

 There is no merit to the remaining contention (relating to the negligence count) that the court erroneously refused to give two instructions requested by appellants. The first of these instructions, B.A.J.I. 22 (revised), relates to direct and indirect evidence, inferences, presumptions and burden of proof. It seems to be appellants' position that since decedent was entitled to the presumption of due care, the jury would have been told by the last statement in the refused instruction that, if it (the presumption) is not controverted, "the jury is bound to find in accordance with the presumption." The answer to this claim of error is that another in-

struction, B.A.J.I. 135-A, relating specifically to the presumption in question, was read to the jury: "The law presumes that Fred Levizon, the deceased, in his conduct at the time of and immediately preceding the accident here in question, was exercising ordinary care and obeying the law. This presumption is a form of prima facie evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. When there is other evidence that conflicts with such a presumption, it is the jury's duty to weigh that evidence against the presumption and any evidence that may support the presumption, to determine which, if either, preponderates . . ." No prejudice has been made manifest. The second of the two instructions refused, B.A.J.I. 207-A, distinguishes "the assumption of risk just described which bars recovery, and the ordinary and necessary acceptance of common risks such as surround us all and that lie in the possibility that other persons will not perform their duties toward us. As to this latter kind of everyday risk, a person will not be barred from recovery by the fact, if it be a fact, that while he, himself, is exercising ordinary care, and when nothing exists in the circumstances that either cautions him, or would caution a reasonably prudent person in like position, to the contrary, he assumes that others will perform their duties toward him and acts on that assumption." The point is without merit. At appellants' request, the court read B.A.J.I. 138.2 (right to assume others' good conduct), and, on the request of respondent, B.A.J.I. 213-C (duty toward invitee); these instructions informed the jury, although in different terminology, as to the matter which appellants claim was erroneously withheld. An examination of the record shows that the jury was fairly and fully charged.

We have decided this appeal on the merits, even though the only formal judgment entered shows on its face that it applies only to the verdict of the jury, being wholly silent on the granting of the nonsuit; furthermore, the notice of appeal refers only to that judgment which was entered January 25, 1960, and the clerk's transcript makes no mention of any minute order disposing of count two. Manifestly, therefore, there has not been any final judgment at bar—"There can be only one judgment in any case between the same parties." (*Behr* v. *County of Santa Cruz*, 172 Cal. App.2d 697, 702 [342 P.2d 987].) As we pointed out in *Western Electroplating Co.* v. *Henness*, 172 Cal.App.2d 278 [341 P.2d 718], "where several counts are involved be-

tween the same parties . . . there cannot be a piecemeal disposition thereof, with a separate judgment and right of appeal each time one is disposed of; to the contrary, the errors must be reviewed on a single appeal from the final judgment'' (p. 282). ▮▮▮ In *Murphy* v. *Fong Shuck*, 151 Cal. App.2d 64 [311 P.2d 80], nonsuits were granted on some counts of the complaint and other counts given to the jury; an appeal from the purported judgment disposing only of the latter was dismissed and the cause remanded to the trial court for amendatory action not inconsistent with the procedural conclusions there reached. In the *Behr* case, *supra,* which is similar to that at bar, the court did what was done in *Gombos* v. *Ashe*, 158 Cal.App.2d 517 [322 P.2d 933] ; in the interests of justice, the judgment was ordered to be amended by adding a dismissal of the third cause of action, and the notice of appeal from the premature judgment of dismissal was treated as a notice of appeal from the judgment as amended; the appeal was then decided on the merits. We prefer to follow the course of action taken in *Behr* and *Gombos*; the parties here are entitled to an appellate determination of the validity of their respective claims, and no good reason appears why they should not have that determination now. Accordingly, the judgment of January 25, 1960, is ordered amended by adding thereto a paragraph dismissing the second cause of action based upon the order granting a nonsuit thereto. This having been done, the notice of appeal, which was timely filed on March 31, 1960—a motion for a new trial having extended the time for appeal—may be properly considered, and we do so consider it, as an appeal from the judgment as thus amended.

The portion of the amended judgment dismissing the second cause of action is reversed; the remaining portion of said amended judgment is affirmed. The parties will bear their respective costs on appeal.

Wood, P. J., concurred.

FOURT, J.—I dissent.

As heretofore indicated the complaint for wrongful death in this case set forth two separate causes of action. The first cause charged that the owner of the business in question *negligently instructed* Levizon on how to remove the part from the car, *negligently supplied* Levizon with unsuitable equipment and *negligently supervised* the deceased's removing of the part from the old automobile. The second cause

charged that the defendant *wantonly and recklessly instructed* the deceased on how to remove the part in question and *wantonly and recklessly supervised* the deceased, and *wantonly and recklessly provided* him with unsuitable equipment.

The "JOINT STATEMENT UNDER PRE-TRIAL RULES" provides in part: ". . . (2) the action is one for wrongful death of Fred Levizon arising out of the failure of faulty equipment and jack furnished to decedent by the defendant" and "among the matters in dispute and at issue are: 1. *Negligence* of defendant; 2. *Contributory negligence* of the decedent; 3. Amount of damages suffered by the plaintiff; 4. *Assumption of risk*." It is noted that no reference is made to any charge of willful misconduct, wantonness or other claim as is set forth in the asserted second cause of action.

The cause went to trial on Monday, January 18, 1960. The plaintiffs completed the presentation of their case toward the end of the afternoon session on Tuesday, January 19, 1960. On the morning of Wednesday, January 20, 1960, and before the defendant proceeded with his case in chief, the defendant made a motion for a judgment of nonsuit as to both causes of action. Citations of authority were given to the court by the plaintiffs, and great reliance was placed on *Cawog* v. *Rothbaum*, 165 Cal.App.2d 577 [331 P.2d 1063]. Discussion was had in chambers as to the holding in the *Cawog* case and it was pointed out to the court by the plaintiffs' counsel that the instructions submitted by the plaintiffs on willful misconduct were taken from the *Cawog* case. Counsel for the plaintiffs advised the judge: "I'd like to have some more law on it." The judge shortly thereafter stated in effect that during the noon hour he would again read the cases which previously had been cited to him and that he would, and he did then and there, take the motion for the nonsuit as to the second cause of action under submission. It is to be noted that the motion was submitted at the conclusion of the testimony of the plaintiffs' case, and before any evidence was taken upon the defendant's case in chief. The motion for the nonsuit on the asserted first cause of action was denied. It appears to me that the procedure adopted by the trial judge was not "rather unusual" as indicated by the majority of this court. In fact the judge was simply saving time in permitting the cause to proceed before the jury during the morning session with the expectation that he would spend a part of his lunch hour again reading the cited cases and thereafter would rule upon the motion with reference to the

asserted second cause of action. At the conclusion of the presentation of the defendant's case the defendant made a motion for a directed verdict. The motion for a directed verdict was denied. The motion for a nonsuit was granted as to the second cause of action.

The judge specifically stated at the time of his ruling on the granting of the nonsuit motion with reference to the second cause of action that he considered only the testimony which had been given up to the time of the making of the motion and in effect stated that he had not considered any of the testimony which was given after the plaintiffs' case was closed.

The majority opinion sets forth in part the testimony of Heeter after the motion for the nonsuit was made, that is, his testimony as a witness in the defendant's side of the cause. To me it appears unfair and improper for this court to consider testimony which the trial judge stated in effect that he did not and would not consider in ruling upon the motion. This court should place itself in exactly the position that the trial court was in when the matter was submitted, namely at the conclusion of the plaintiffs' case, and should not inject into the case a great deal of testimony and inferences therefrom which properly were not considered by the trial judge.

The opinion of the majority states that the testimony of Heeter establishes the elements necessary to constitute willful misconduct. The testimony of Heeter up to the time the motion for a nonsuit was made does not establish the so-called required elements of willful misconduct, and in my view the majority, in order to bolster the opinion, have relied upon testimony from a part of the record which we cannot with propriety consider. In other words, the trial judge properly considered certain limited testimony and that testimony only, whereas the majority of this court have improperly considered the testimony which is contained in the entire record.

At the time of the argument before the trial judge upon the motion for a nonsuit as heretofore indicated, plaintiffs relied heavily upon language in the *Cawog* case, which was written in this division. In *Cawog* the facts were that a driver of a truck proceeded toward a pedestrian in a narrow alleyway and although the driver of the truck saw that there was no place for the pedestrian to go safely he "bore down on him," did not apply his brakes, did not slow down or attempt to stop and apparently paid no attention to the frantic shouting and running of the pedestrian in his effort

to avoid being run down. The trial judge submitted the issue of willful misconduct to the jury. Under the circumstances it was proper to do so as this court pointed out. The facts of that case and the facts of the present case present no similarity. In *Cawog* the driver of the truck saw the pedestrian in the narrow alleyway, saw the pedestrian frantically waving his shopping bags and shouting out to the driver to slow down, and in spite of the circumstances the truck driver continued on, ignored the pedestrian's predicament and caused the truck to strike the pedestrian. Any language used in an opinion must necessarily be interpreted with reference to the facts of the particular case in which the language is used. It was stated in *Lovett* v. *Hitchcock*, 192 Cal.App.2d 806, 813 [14 Cal.Rptr. 117, 121], "We caution the trial bench and bar that cases warranting instruction on wilful or wanton misconduct will seldom arise. By its very definition, such misconduct is rare. The recent decision applying the rule (*Cawog* v. *Rothbaum, supra,* 165 Cal.App.2d 577 [331 P.2d 1063]) presented an extremely aggravated situation . . . But wanton or wilful misconduct is much more than negligence or gross negligence. It should but rarely be resorted to by the trial courts. . . ."

At the very most the facts of this case as gathered from the testimony up to the time the motion for a nonsuit was made are that the defendant knew that the deceased, who was an adult, had deliberately placed himself in a dangerous position and the defendant did not take affirmative action to override the judgment of the deceased in placing himself in such position, to eliminate any danger.

The majority opinion states that there is a conflict in the evidence presented by the defendant, to the effect that "defendant gave decedent two stands or blocks to put under the car." I have read the entire record in this case and the testimony of the defendant was not impeached. There is no evidence in conflict with the defendant's statement to the effect that he did provide Levizon with stands or blocks to put under the car upon which he was to work. True it is that an ambulance attaché stated in effect that he did not see any stands when he first observed the situation, but it is also true that the ambulance attaché was not looking for such stands or blocks, that he was interested only in Levizon under the car, and nothing else, at the time he was there. The ambulance attaché did not say that there were no stands or blocks there and in fact he stated in effect that he did not look to

see if there were any such present when he first arrived, but that after the body had been removed from under the car he did notice some stands a short distance from the car. His powers of observation were not too alert for he did not even notice the make of the car upon which Levizon was working. Such testimony is not evidence under the circumstances that the defendant did not do as he positively testified.

To say that the facts of this case constitute willful misconduct is in my opinion wholly unreasonable. There may have been negligence, but negligence and willful misconduct are inherently incompatible. (*Mercer-Fraser Co.* v. *Industrial Acc. Com.*, 40 Cal.2d 102, 120, 125 [251 P.2d 955].)

The charging allegations of the first and second asserted causes of action are substantially the same except that in the first cause of action it is charged that the defendant *negligently instructed* Levizon—defendant *negligently supplied* Levizon with unsuitable equipment and *negligently supervised* Levizon's removing the part. In the second cause of action the charge is that the defendant did the same things as charged in the first count but that he acted "wantonly and recklessly."

A close reading of the record demonstrates that the evidence is to the effect that the defendant did not in any respect or ever instruct Levizon *on how to remove the particular automobile part, nor did he supply him with unsuitable equipment, nor did he supervise him in any respect* as to removing the automobile part. The evidence is clear to the effect that Levizon thought he knew how to take the part off of the automobile without any instructions and that he was supplied with the proper stands and blocks had he but used them.

The trial judge should not be convicted of error upon testimony which properly he did not even consider. The majority of this court in my opinion have misconstrued the law and have added to and distorted the facts upon which the case ought to be determined. It is serious enough to construe too liberally the limited facts which ought to be considered under the circumstances, but to add deliberately to the basic facts upon which the motion was submitted by the trial judge results in a miscarriage of justice.

Wantonness is the key word in the asserted second cause of action. In California Words, Phrases and Maxims it is stated:

"A tort having some of the characteristics of both negligence and wilfulness occurs when a person with no intent to cause harm intentionally performs an act so unreasonable and dangerous that he knows, or should know, it is highly

probable that harm will result. Such a tort has been labeled 'wilful negligence,' 'wanton and wilful negligence,' 'wanton and wilful misconduct,' and even 'gross negligence.' It is most accurately designated as 'wanton and reckless misconduct.' It involves no intention, as does wilful misconduct, to do harm, and it differs from negligence in that it does involve an intention to perform an act that the actor knows, or should know, will very probably cause harm. Wanton and reckless misconduct is more closely akin to wilful misconduct than to negligence, and it has most of the legal consequences of wilful misconduct. *Donnelly* v. *Southern Pac. Co.* (1941) 18 Cal.2d 863, 869, 870, 118 P.2d 465; *Mercer-Fraser Co.* v. *Industrial Acc. Com.* (1953) 40 Cal.2d 102, 116, 251 P.2d 955.''

An injury, to be ''wanton,'' must have been caused by one conscious of his conduct and that injury would likely result therefrom, and such person, with reckless indifference to consequences, must have intentionally committed a wrongful act or *omitted a known duty* which produced the injuries resulting. Admittedly in this case the defendant did nothing affirmatively which under any circumstances could be interpreted as being wanton. Query—What *known duty* did he, the defendant, omit to perform. In my opinion there was none.

A wanton act is a wrongful act done on purpose, or in malicious disregard of the rights of another. A high degree of likelihood that substantial harm will result to another is an essential ingredient of wanton and reckless conduct.

There is no proper evidence to the effect that the defendant exhibited a conscious indifference to consequences so far as Levizon was concerned.

It is my belief that it is not the duty or the province of this court to mold the law to the end that in effect the court creates what is tantamount to absolute liability upon the part of an invitor to an invitee who is pursuing a course of his own without direction from the invitor and who by reason of his own carelessness is either hurt or killed.

The majority opinion renders any distinction between negligence and willful misconduct more theoretical than real.

I would affirm the judgment of the trial court.

A petition for a rehearing was denied January 12, 1962. Fourt, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied February 14, 1962. Schauer, J., and Dooling, J., were of the opinion that the petition should be granted.