[Civ. No. 29590.   Second Dist., Div. One.   June 10, 1966.]

JOHN HEWKO, Plaintiff and Appellant, v. G. I. TRUCK-ING COMPANY et al., Defendants and Respondents.

Arnold, Smith & Schwartz and Howard P. Canter for Plaintiff and Appellant.

Morgan, Wenzel, Lynberg & Morris and Ezekiel P. Perlo for Defendants and Respondents.

WOOD, P. J.—During a strike against plaintiff's employer (Utility Trailer Manufacturing Company), plaintiff was picketing in the area of a driveway that extends to the delivery entrance to the employer's place of business. Defendant Olinger, who was delivering supplies to the company, drove a truck (owned by defendant G. I. Trucking Company) into the driveway. While the truck was proceeding along the driveway toward the entrance, the truck and plaintiff came in contact, and plaintiff was injured.

Plaintiff commenced this action for damages for personal injuries, apparently on the theory that his injuries were proximately caused by defendants' negligence. (The record does not include the complaint or answers thereto.) The record contains several documents submitted at the pretrial conference, including a pretrial order, a separate statement of issues which is signed by plaintiff's counsel, and a similar statement which is signed by defendants' counsel. The pretrial order recites that said statements set forth the issues remaining in dispute. In each statement the following "issues" are listed: negligence, contributory negligence, proximate cause, assumption of the risk, and the nature and extent of plaintiff's injuries. The list in each statement also includes the words "assault and bat-

tery," but a line was drawn through those words on each statement, and the change was initialed by counsel. In a non-jury trial, it was found that the accident proximately resulted from the negligence of defendant Olinger and from the contributory negligence of plaintiff. Plaintiff appeals from the judgment that plaintiff take nothing by his complaint.

Appellant contends that the court should have found that defendants were guilty of wanton and reckless misconduct.

About 10 days prior to January 17, 1963, members of the United Auto Workers Union commenced a strike against the Utility Trailer Manufacturing Company. During the strike, the union maintained "picket teams" in shifts, at the delivery entrance to Utility on Chestnut Street, and plaintiff was one of the pickets. On several occasions (two or three times a day) during the 10 days prior to January 17, defendant Olinger made deliveries to Utility in a truck owned by his employer, defendant G. I. Trucking Company. On one of those occasions (about one week prior to January 17), while Olinger was making a delivery, a rock was thrown against the windshield of the truck and "shattered" the windshield. Thereafter, at various times, the police patrolled the vicinity of the delivery entrance.

The police advised Olinger that when there were pickets in the driveway area he should drive very slowly so that, if a picket stepped in front of the truck, the truck would push the picket aside without hurting him. The police also told Olinger not to stop when pickets were in the driveway;—that statement was made so that he would not get "in a fix."

In the morning of January 17, Olinger made a delivery to Utility and was accompanied by police who were in a police car. About noon, he returned to Utility to make another delivery. There was no police car in the area, and he parked about a block from the delivery entrance. He waited for 15 minutes, and then drove the truck about 20 miles an hour on Chestnut Street toward the driveway to the delivery entrance. When he arrived at the driveway, he proceeded at the rate of 5 miles an hour, and made a left turn into the driveway.

According to Olinger's testimony, plaintiff Hewko and three other pickets were in the area when Olinger entered the driveway. Hewko was sitting about 10 or 15 feet from the other pickets, who were standing in a group near the driveway. As Olinger entered the driveway, Hewko "got up and approached the truck," and as he approached the truck, he was walking faster than the truck was moving. Hewko walked

in front of the truck, and the front bumper of the truck came into contact with Hewko and "pushed him off to the side." Hewko did not "lose his footing," and he (Olinger) proceeded into the entrance. As he did so, he looked into the side mirror of the truck and saw Hewko walk back to the place where he had been sitting, and he saw him sit down. He had never seen Hewko before and did not feel any ill will toward the pickets. Olinger also testified that his driver's license provides that he wear glasses while driving, but that he was not wearing glasses on January 17 because he had broken the glasses about three weeks prior to that date.

According to Hewko's testimony, he first saw the truck when it was traveling westerly about 20 miles an hour on Chestnut Street, slowed down, and made a left turn into the driveway. The truck driver drove the truck along the driveway, "gunned" the motor, and turned the truck toward him. He tried to get out of the way, but the left side of the truck's front bumper "clipped" his left leg and knocked him down. He had not "taken his eyes off the truck" from the time he had first seen it until it had struck him, because it was his duty to carry his sign so that truck drivers would see it. He had been picketing every other day since the strike had commenced. Other delivery trucks had come into the driveway but had turned around without passing through the entrance. No truck had ever passed through the entrance while he had been picketing. He had not seen the G. I. truck before, but he had heard rumors that it was making deliveries. An officer arrived about two or three minutes after the truck struck him. The officer asked him for his driver's license, but did not ask him whether he had been injured, and he did not give any statement to the officer.

Officer Yerkes testified that when he arrived at the driveway area Hewko was walking and was not limping; and that Hewko made a statement to him in substance as follows: The truck had come westbound on Chestnut Street at a high rate of speed, had made a left turn into the driveway "where we were picketing," and had hit him (Hewko) on the right leg with the left side of its bumper. Four other purported witnesses gave the officer their names, but the picket captain said those witnesses would not give the officer any statements because the incident would "be handled by the union" and the union lawyers. The officer also testified that during the strike the police had been making a "routine patrol" of the area for the purpose of "standing by and keeping the peace."

The testimony of two other pickets corroborated Hewko's testimony.

Appellant contends that the evidence establishes, and the court should have found, that defendants were guilty of wanton and reckless misconduct. He argues that, if the court had made such finding, his contributory negligence would not have been a bar to his action for damages. (Citing *Costa* v. *A. S. Upson Co.*, 215 Cal.App.2d 185 [30 Cal.Rptr. 66]; and *Cawog* v. *Rothbaum*, 165 Cal.App.2d 577 [331 P.2d 1063].)

As above shown, there was evidence that an act of violence had occurred on a previous occasion when the truck had made a delivery at the picketed entrance, and that the police thereafter had taken safety measures, which included advice to the truck driver with reference to his conduct while making deliveries. According to the testimony of the truck driver he was driving the truck very slowly in the driveway, and plaintiff deliberately walked in front of the truck. According to plaintiff's testimony, he was walking in the picket line, and the truck driver deliberately drove the truck against him. Plaintiff's testimony that the left side of the bumper struck his left knee would tend to support his testimony that he was trying to move away from the path of the truck when the bumper struck him. His statement to the officer a few minutes after the accident that the left side of the bumper struck his right knee would, however, tend to support the truck driver's testimony that plaintiff was walking toward the path of the truck when the bumper struck him. There were other conflicts in the evidence relating to the conduct of the parties—for example, the conflict with reference to the speed and direction of the truck when the accident occurred, and the conflict as to whether plaintiff was attempting to prevent the truck from passing through the picketed entrance.

It has been said that "wilful misconduct *depends upon the facts of a particular case*, and necessarily involves deliberate, intentional or wanton conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom." [Italics added.] (*Emery* v. *Emery*, 45 Cal.2d 421, 426 [289 P.2d 218]; *Studer* v. *Plough*, 179 Cal.App.2d 436, 440-441 [3 Cal.Rptr. 785]; see *Levizon* v. *Harrison*, 198 Cal.App. 2d 274, 279-280 [18 Cal.Rptr. 284].)

In the present case, the court found that the defendant Olinger and the plaintiff were negligent. The evidence did not

require, as a matter of law, that the court find defendants guilty of wanton and reckless misconduct.

It also appears that there is a question as to whether plaintiff properly raised the issue of alleged wanton and reckless misconduct by defendants. As above shown, the complaint has not been included in the record. It appears from the pretrial order and the pretrial statements that the complaint contained a cause of action for assault and battery and a cause of action based upon negligence. The pretrial order provides that the issues remaining in dispute are set forth in the separate pretrial statements of the parties. As previously stated, each separate statement lists only issues relating to negligence. There is no reference to an issue of wanton and reckless misconduct; and, on each statement, an issue designated "assault and battery" was expressly deleted by counsel for the respective parties. The record also shows that when the case was called for trial, the judge said: "So that the record will be straight, in this matter we are proceeding on the negligence cause of action only. . . ." Counsel for defendants replied, "That is true," and counsel for plaintiff did not reply. The record further shows that plaintiff's first reference to issues other than negligence occurred during his closing argument. After the judge had said that both parties were negligent, plaintiff's counsel said that he was "going for more than negligence in this case."

Appellant asserts on appeal that he raised the issue of wanton and reckless misconduct in his closing argument and that he made a request for special findings with reference to that issue. Respondents cite several authorities to the effect that wanton and reckless misconduct must be specifically pleaded (e.g., *Van Meter* v. *Reed,* 207 Cal.App.2d 866 [24 Cal.Rptr. 688] ; *Snider* v. *Whitson,* 184 Cal.App.2d 211 [7 Cal.Rptr. 353] ; 2 Witkin, Cal. Procedure (1954) Pleading, § 303, p. 1280; and 2 Chadbourne, Van Alstyne and Grossman, Cal. Pleading, § 957, p. 38) ; and cite authorities to the effect that where a case has been tried on a specific theory, fairness to the court and opposing counsel requires adherence to that theory on appeal (e.g., *Thomson* v. *Casaudoumecq,* 205 Cal. App.2d 549 [23 Cal.Rptr. 189] ; *Carbine* v. *Meyer,* 126 Cal. App.2d 386 [272 P.2d 849] ; and *Munfrey* v. *Cleary,* 75 Cal. App.2d 779 171 P.2d 750]) ; and cite authorities to the effect that an issue raised by evidence presented at the trial must be "consciously and intentionally" tried (e.g., *Rivadell, Inc.* v.

*Razo*, 215 Cal.App.2d 614 [30 Cal.Rptr. 622] ; *Riverside Water Co.* v. *Gage*, 108 Cal. 240 [41 P. 299]).

In the present case, where the complaint (not in the record) apparently does not specifically plead wanton and reckless misconduct, where counsel in their pretrial statements specifically limited the issues remaining in dispute to issues relating only to negligence, where the issues were limited to negligence when the case was called for trial, where the case was tried on the theory of negligence, where plaintiff first referred to another theory in the closing argument, and where the court made findings with reference to negligence, the court was not required to make findings with reference to wanton and reckless misconduct.

The evidence was sufficient to support the judgment.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.